54 So.2d 68

# In re OPINION OF THE JUSTICES.
## No. 126.

Supreme Court of Alabama.
Aug. 20, 1951.

Wm. Alfred Rose and Ellene Winn, Birmingham (Alex S. Lacy and White, Bradley, Arant, All & Rose, all of Birmingham, of counsel), filed brief amici curiae.

To the Members of the
Alabama House of Representatives
State Capitol
Montgomery, Alabama

Sirs:

Re: House Resolution No. 69 proposing constitutional questions relative to pending House Bills numbered 800 and 801.

In view of certain recent Opinions each question propounded in your inquiry is due a negative answer, although perhaps it can be said with justification that there has been some laxness of expression in these later opinions which may have trenched on earlier cases interpreting some of the considered constitutional provisions.

### Preface

As preface to this opinion we will advert to certain antecedent legislation leading to the acquisition and construction of the coliseum property. The Legislature passed in 1945 two acts which manifested its intention that the Building Commission out of the funds appropriated to it should allocate, if possible, one million dollars for the purpose of constructing a livestock coliseum, which when constructed was to be operated by the Agricultural Center Board for the purposes specified in the Agricultural Center Board Law. These acts will be found in General Acts 1945, Regular Session, p. 116, §§ 367(1)–367(4), Title 55, Code of 1940, Cum. Pocket Part and General Acts 1945, Regular Session, p. 447, §§ 678–684, Title 2, Code of 1940, Cum. Pocket Part. The first act was the Building Commission Law and the second the Agricultural Center Board Law. These acts were approved by the Governor subsequent to an Opinion of the Justices in response to a request from the Governor concerning the constitutionality of Act No. 32, approved May 21, 1943, General Acts 1943, p. 25, §§ 415(1)–415(8), Title 2, Code of 1940, Cum. Pocket Part, which we will call the Alabama State Markets Board Act. In re Opinion of the Justices, 247 Ala. 66, 22 So.2d 521. That opinion expressed the view that the Markets Board Act, so far as it provided for the acquisition, equipment, operation and maintenance of a public market or markets was not violative of Section 93 of the Constitution prohibiting the State from engaging in works of internal improvement, etc. Manifestly the Governor in giving approval to the Building Commission Law and the Agricultural Center Board Law passed in 1945 must have been influenced by the foregoing opinion of the justices to the extent of concluding that the construction and operation of the livestock coliseum would likewise not be considered an internal improvement within the meaning of Section 93 of the Constitution.

On July 11, 1946 the Building Commission under the 1945 Building Commission Law allocated the sum of five hundred thousand dollars to construct the livestock coliseum. The Governor appointed the Agricultural Center Board on July 25, 1946. The Governor approved the General Appropriations Act for the two fiscal years ending respectively September 30, 1948 and September 30, 1949. Gen. Acts 1947, p. 183. This act became effective October 1, 1947, and by it there was appropriated out of the Agricultural Fund in the state treasury two hundred fifty thousand dollars for the purpose of supplementing the funds earmarked in the Building Commission Act of 1945. (The Agricultural Fund referred to above is the fund provided in Title 2, Article 4 of Chapter 1 of 1940 Code of Alabama, accruing to the Department of Agriculture from inspection fees and the like out of which the Department operates. Generally speaking all monies appropriated to the Department of Agriculture seemingly comes from the Agricultural Fund.) Thereafter on September 25, 1947 the Governor approved Act No. 525, General Acts 1947, Regular Session, p. 384, which further provided for the construction and

equipment of an Agricultural Center in Montgomery and appropriated to the Building Commission aforesaid out of any monies remaining in the general fund of the State not otherwise appropriated as of September 30, 1947, the sum of two hundred fifty thousand dollars to be repaid from the Agricultural Fund—this sum likewise to be used for the acquisition and construction of the coliseum property. Thus has the Legislature made available for the purpose of constructing and equipping the said agricultural center the sum of a million and five hundred thousand dollars. And the Building Commission has allocated for that purpose the full amount which the Legislature indicated might be used for such purpose. Construction began in March 1949 and work stopped in 1951 when all available funds had been used. It is quite obvious from the recitations in the acts now in question that the coliseum is in a rather serious state of incompletion and must remain so unless more money is made available, and that the two House Bills numbered 800 and 801 have for their purpose the completion of this facility.

## Opinion

Section 213. The first question, whether or not bonds issued by the proposed corporation would constitute debts of the State within the purview of Section 213 of the Constitution has been negatively answered in our recent decisions in Opinions of the Justices, 252 Ala. 465, 41 So. 2d 761, Id., 254 Ala. 506, 49 So.2d 175, and in Norton v. Lusk, 248 Ala. 110, 26 So.2d 849, and in earlier decisions therein cited. We there recognized the established principle that a public corporation is a separate entity from the State and that debts of such corporation are not debts against the State within the meaning of Section 213 of the Constitution. The corporation act specifically confines the lien of its bonds to the rentals and if not sufficient the deficit to be paid from the Agricultural Fund and they shall not in any manner constitute an obligation of the State or its taxing power. It is of some significance that no lien may attach to the coliseum property as security for payment of the revenue bonds.

Some suggestion has been made in consultation that for the State to convey the coliseum property which it is sought to be assumed produces some revenue in its present incompleted state and for the public corporation to then pledge the entire revenue when the property is completed to the payment of the revenue bonds would constitute a debt within the meaning of Section 213 of the Constitution. We can rationalize no distinction between the status treated in Opinion of the Justices, 252 Ala. 465, 41 So.2d 761 and that here presented. In that opinion we dealt with and approved a proposed conveyance by the State to the Alabama State Employment Security Corporation of land adjacent to or in the vicinity of the capitol. We did not predicate any conclusion upon our opinion with reference to the income producing potentiality of the facility to be conveyed to the public corporation dealt with in that opinion and there was no evidential data respecting the property's present or potential value as income producing. Here, however, we do have specific data indicating that the coliseum property produces no net revenue since the Act pursuant to which the facility was acquired and constructed specifically provides that the income from its utilization "shall not be made with a view of producing any revenue or profit * * *, but shall be based exclusively upon reasonable cost of operation and maintenance * * *." Act No. 282, General Acts 1945, p. 447, § 2.

We deem it not out of place to mention also that if said bill is duly passed in pursuance of valid legislative procedure and approved by the Governor, it will in effect become the law of Alabama, and in legal effect the provisions of the act will be written into the bonds issued thereunder and become a part of the contract between the purchasers of the bonds and the corporation. On its face it positively provides that said bonds shall not become a debt of the State nor a charge against its general credit, or its taxing power. Therefore all persons dealing in respect to such bonds must take notice of these provisions which

the legislature intends to govern the validity of said bonds.

Section 99. The second question is whether conveyance by the State to the public corporation of the lands in the Agricultural Center and the partially completed coliseum thereon would offend Section 99 of the Constitution prohibiting donation of State lands to *private* corporations, associations or individuals. Quite obviously this query is due a negative answer since the proposed corporation is not within the category of prohibited corporations, associations, individuals, etc., but is a public corporate entity to be created by the State under which circumstances there is no inhibition against conveyance of State owned lands to it. Ala. State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Opinions of the Justices, 252 Ala. 465, 41 So.2d 761, Id., 254 Ala. 506, 49 So.2d 175.

Section 213 of the Constitution relative to the lease agreement. The third question is whether or not the lease agreement provided for in the two said house bills would constitute a debt of the State inhibited by said Section 213 of the Constitution. A similar question was answered negatively in said Opinion of the Justices in 252 Ala. 468, 41 So.2d 771, and the question here posed is also answered in the negative. There it was proposed in one act to create the Alabama State Employment Security Corporation with power to erect an office building on lands to be donated by the State and to issue bonds secured by rentals to secure a loan of money with which to make the construction. A companion measure provided for the leasing of quarters in the building to State agencies, among them the Department of Industrial Relations; the rents to be paid out of funds appropriated to them for that purpose and out of grants from the Federal Government; and providing that in event of a deficiency due to the failure of the Legislature in any fiscal year to make the necessary appropriation and if the Federal grant should be insufficient to pay the rentals then there should be diverted from the clearing account of the Unemployment Compensation Fund a sufficient amount accruing from interest and penalties as should be necessary to make up any rental deficiencies. Additionally it was provided that certain other funds inuring to the credit of the Department of Industrial Relations under Article 12, Title 51 of the Code of 1940 should be likewise diverted and devoted to the payment of the rentals to the corporation in case of such deficiency. We sustained that provision of the act, Section 3, for pledging the fund derived from the Unemployment Compensation Fund, subject to restrictive provisions in Sections 213 and 44 of the Constitution, but we held that funds arising out of Article 12, Title 51 were by statute required to be covered into the state treasury to the credit of the general fund and that they could not be pledged because in violation of Section 213 of the Constitution. The "Board Act" here in question provides that the rentals shall be made payable solely out of monies of the Agricultural Center Fund consisting of revenue derived by the Board from operation of the coliseum but that to such an extent, if any, as such revenue may not be sufficient to pay said rentals plus operation and administrative expenses of the Center Board solely out of monies accruing to the Agricultural Fund. Code 1940, Title 2, § 31. This proviso is no more violative of Section 213 of the Constitution than was § 3 above referred to in 252 Ala. 468, 41 So.2d 771.

As regards the utilization of monies from the Agricultural Fund to make up such deficiency it is appropriate to point out, as we did in 252 Ala. 468, 471, 41 So. 2d 771, that Sections 213 and 44 of the Constitution must be read into the proviso so that the pledge there provided for is restricted as not to deplete the Agricultural Fund in any given fiscal year in a manner which would abridge the proper administration of the Agriculture Department out of that fund within the purview of Chapter 1, Article 4, Title 2, Code 1940, nor to affect the power of future Legislatures to repeal or amend the law providing for the fund. The bill (H.B. 801, Section 4), the provisions of which must be read into the lease, in effect so provides.

Section 93 of the Constitution. The fourth and final question is whether the

proposed acts would authorize the State to be engaged in works of internal improvement or to be interested in any private or corporate enterprise or to lend money or its credit in aid thereof—prohibited by Section 93 of the Constitution. We referred to this item in our "preface" supra, and it is our view that the question has been negatively answered in an Opinion of the Justices reported in 247 Ala. 66, 22 So.2d 521, which dealt with an act creating the Alabama State Markets Board. There we were considering an act, General Acts 1943, p. 25, Code 1940, Tit. 2, § 415(1) et seq., which created the Alabama State Markets Board authorizing it to acquire lands, structures, facilities and equipment suitable for the inspection, grading, standardization, classification, refrigeration, dehydration, canning, packing, processing, cold storage and marketing of agricultural products, and to lease space and facilities in such structures and to make charges for services and facilities. In that act funds for carrying out its purposes were appropriated out of both the Agricultural Fund and out of the general fund of the State. We there held that the construction of marketing facilities by the Board was not works of internal improvement; that the act did not have the effect of engaging the State in works of internal improvement or making the State interested in a private or corporate enterprise in contravention of Section 93 of the Constitution. Our conclusions were predicated upon a consideration that the Markets Act was within the police power of the State. The proposed acts here involved like the statutes involved in the Markets Board opinion disclaim any purpose to operate the coliseum property with a view of producing any net revenue or profit. The Markets Acts had for their purposes the development and promotion of agriculture as one of the State's main sources of income. The present proposed acts declare the same purpose with respect to livestock. If there be any difference in essence between the two enterprises we think it to be a difference without distinction, the difference between twiddledum and twiddledee. If the one be not engaging in works of internal improvement the

other cannot be, the only difference being that one deals with agricultural products, the other with livestock products. A significant feature of said Markets Acts was that to carry out their purposes appropriations were made out of the general fund. In the coliseum acts two public agencies are created for the purpose of carrying out the works involved and charged with the responsibility of producing the revenue and providing the security for the money proposed to be borrowed. The only fund other than rental subject to appropriation for the purposes of the act, and that contingently, are those in the separate Agricultural Fund with which, under the statute creating the fund, no other department or agency of the state may have any concern. In the opinion last supra we again pointed out, just as this court has done in all other cases involving an application of Section 93 of the Constitution, the evils at which this section of our organic law was directed, namely the financial disaster which resulted to the State through prodigal acts of reckless officials by the involvement in enterprises belonging alone to private enterprise. In this proposed plan there is no involvement of the State's general revenues for the pledging of the State's credit to any thing and being so we do not think it can be soundly contended that the provisions in any wise offend Section 93 of the Constitution.

Respectfully submitted,

J. ED LIVINGSTON
Chief Justice.
ARTHUR B. FOSTER
THOMAS S. LAWSON
ROBERT T. SIMPSON
DAVIS F. STAKELY
Associate Justices.

To the House of Representatives
Capitol
Montgomery, Alabama
Dear Sirs:

Responding to House Resolution No. 69 embodying an inquiry as to pending House Bill No. 800 and House Bill No. 801, this opinion is limited to your inquiries Nos. 1, 2, 3, and 4.

I deem it appropriate to observe that inasmuch as this legislation has not been

passed and its constitutionality approved by the legislature the usual presumption in favor of an act of the legislature which has become the law by passage and approval of the Governor, is not here pertinent.

However, I deem it not out of place to observe that the Justices are not in unanimous accord as to the authority of the legislature to embody the Governor and the members of his cabinet whose duty it is to deal with and protect the financial interest of the state and who under the constitution should not be formed into a corporation antagonistic to the state's interest. See Opinion of the Justices, 247 Ala. 195, 203, 23 So.2d 505, wherein the writer differs with the majority of the Justices and states his views in respect thereto, 247 Ala. commencing on page 199 and concluding on page 203, 23 So.2d page 508 and concluding on page 512, in his opinion.

Therefore as a basis for this response the writer adopts the "summary of the pending bill and pertinent statutory provisions" stated in the brief "Amici Curiæ" filed on this inquiry, as follows:

"The questions propounded by the House of Representatives deal with the constitutionality of the 'corporation bill' and the 'board bill', two related bills setting up an arrangement for completing the construction and equipment of the presently uncompleted coliseum building located in the Alabama Agricultural Center at Montgomery.

"The 'corporation bill' contains findings by the Legislature that agriculture, dairying, and the raising of livestock together constitute the principal sources of income to the people of this state, that the further development of those pursuits is in the public interest, and that the said coliseum building was designed for use in the education of the inhabitants of the state in those pursuits. That bill authorizes the creation of a public corporation, composed of the Governor, the Commissioner of Agriculture and Industries, and the State Director of Finance, for the purpose of completing the construction and equipment of the said coliseum building and related facilities; authorizes the conveyance to the said corporation by the state of the coliseum building in its present uncompleted condition, together with the lands in connection therewith; authorizes the issuance by said corporation of its revenue bonds, not exceeding $1,250,000 in principal amount for the purpose of completing the said construction and equipment, such bonds to be payable solely out of rentals received by said corporation from the lease of its coliseum properties; and authorizes the lease of said properties to the Agricultural Center Board, an agency heretofore created by Act No. 282, adopted at the 1945 Regular Session of the Legislature.

"The 'board bill' authorizes the Agricultural Center Board to lease from the said public corporation the coliseum building and related facilities under an agreement extending not later than the last maturity of the corporation's bonds for a rental sufficient to pay the principal of and interest on the bonds, to create a reserve for such purpose, and, as additional rental, payment of the premiums on proper insurance covering the leased properties and of all expenses necessary to keep them in good repair. The board is further authorized to operate, manage, and control the coliseum properties for the purpose of conducting and permitting to be conducted therein livestock shows, markets, agricultural displays and other exhibits and related events, and to make such charges for the use of the coliseum properties as will produce revenues sufficient to pay the said rentals (including the payment of insurance premiums and the payment of maintenance costs), and to pay the operating and administrative expenses of the board. The 'board bill' provides that the charges shall not be greater than are required to produce amounts sufficient to pay said rentals and said operating and administrative expenses and states in Section 3 thereof: "'It is hereby declared that it is not intended that this act shall be interpreted as authorizing the board to engage in the business of selling or marketing livestock or products of any kind, or in what may be termed a brokerage business, or to compete with private enterprise.'

"The 'board bill' provides that rentals under the said lease shall be payable solely (a) out of the revenues derived from the operation by the board of the coliseum properties and (b), to such extent as the said revenues may not be sufficient in any fiscal year to pay said rentals and the board's operating and administrative expenses, out of moneys accruing to the Agricultural Fund pursuant to Section 31 of Title 2 of the Alabama Code of 1940. Section 5 of the 'board bill' reads in part as follows: " 'The lease agreement shall never in any event constitute or give rise to an indebtedness of the State of Alabama and no recourse shall ever be had against the general credit of the state or against its general funds for payment of said rentals * * *. No moneys at any time in the General Fund of the state shall ever be used for payment of said rentals.'

"The Agricultural Center Board was created by the said Act No. 282, General Acts, 1945, p. 447, and is charged therein with the management and control of any facility or coliseum that might be constructed for the purpose of housing livestock shows, agricultural and industrial displays, and other exhibits. The Agricultural Center Fund, originally created in the said Act No. 282 and provided for also in the 'board bill', is a special fund in which are required to be deposited all proceeds from the charges made by the board for the use of the coliseum properties. The moneys therein are required by the 'board bill' to be used solely to pay rentals under the said lease agreement and the operating and administrative expenses of the board.

"The Agricultural fund is provided for in Article 4 of Chapter 1 of Title 2 (Sections 31–36) of the Code of Alabama of 1940. Section 31 of said Title 2 provides for the accrual to the Agricultural Fund of moneys collected from fees, licenses, fines, and penalties provided for in Chapter 1 of the said Title 2. The fees, licenses, and charges provided for in said Chapter 1 include such items as fertilizer inspection fees, kerosene inspection fees, warehouse permits, poultry inspection fees, seed testing fees, and similar fees, and in general, by whatever terms they may be designated, are in the nature of charges for services rendered by the Department of Agriculture and Industries. The fines and penalties provided for in the said Chapter 1 are imposed for violations of legal requirements respecting agricultural standards and practices. Article 2 of the said Chapter 1 provides for the use of the moneys in the Agricultural Fund for payment of the expenses (including salaries) of the Department of Agriculture and Industries.

"The 'board bill' appropriates, solely out of the moneys accruing to the Agricultural Fund under the provisions of Section 31 of the said Title 2, an amount in each successive fiscal year equal to the amount, if any, by which the rentals under the said agreement of lease plus the operating and administrative expenses of the Agricultural Center Board exceed the amount of the revenues from that board's operation of the coliseum properties."

Question 1. "Will bonds issued by the public corporation authorized to be created by House Bill No. 800 constitute debts of the State of Alabama within the meaning of Section 213 of the Alabama Constitution?"

The coliseum property, the subject of this and other advisory opinions this day filed, at this time is the property of the state acquired by purchase and by construction through an appropriation of public funds amounting to $1,500,000, which has been in operation and producing sufficient income to pay the agencies of the state for operating the same. The bill proposes and requires the Governor to deed this property to the corporation set up therein and authorizes the pseudo corporation to issue bonds to the amount of $1,250,000 for the completion of the project, reserving to the state the right to own the property when said bonds are amortized. This property as it is now constituted, the act contemplates, shall be put to use for earning an income to amortize the bonds. I am therefore of opinion that it is a state project and the transaction outlined by the proposed acts will constitute a debt in violation of § 213 of the Constitution of 1901. The legislative declaration to the contrary is inconsistent with the facts.

Question 2. "Will the conveyance by the State of Alabama of the uncompleted coliseum building, together with the lands in the Alabama Agricultural Center, to said public corporation, pursuant to the provisions of House Bill No. 800, violate Section 99 of the Alabama Constitution?"

I assume from this inquiry that the state at present owns and has the legal title to the lands and the building situated thereon. Section 99 of the Constitution provides in part,

"Lands belonging to or under the control of the state shall never be donated, directly or indirectly, to private corporations, associations, or individuals, or railroad companies; nor shall such lands be sold to corporations or associations for a less price than that for which they are subject to sale to individuals; provided, that nothing contained in this section shall prevent the legislature from granting a right of way, not exceeding one hundred and twenty-five feet in width, as a mere easement, for railroads or telegraph or telephone lines across state land, and the legislature shall never dispose of the land covered by such right of way except subject to such easement."—Constitution of 1901, § 99.

Your inquiry is answered as follows: Applying the doctrine *ejusdem generis* applicable in the interpretation of constitutional provisions and statutes the language used "to private corporations, associations, or individuals," refers to corporations or associations privately owned and controlled and not to public corporations created for public purposes by the Legislature for the benefit of all the people. The following authorities are persuasive as to the soundness of this conclusion. Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Opinion of the Justices, 254 Ala. 506, 49 So.2d 175.

Question No. 3. "Will the agreement of lease provided for in the said two House Bills constitute a debt of the State of Alabama within the meaning of Section 213 of the Alabama Constitution?"

If the bill is enacted into law, on its face it will declare that such contracts are not obligations of the State of Alabama in violation of Section 213 of the Constitution. The facts being consistent with this declaration.

Question No. 4. "Do the said two House Bills authorize the state to be engaged in works of internal improvement or to be interested in any private or corporate enterprise or to lend money or its credit in aid of any thereof within the meaning of Section 93 of the Alabama Constitution?"

To repeat, as stated in brief of attorneys amici curiae in the following language: "In its fourth question the House of Representatives asks whether the two pending house bills authorize the state to engage in works of internal improvement * * *, within the meaning of Section 93 of the Alabama Constitution?" The brief relies strongly on the Opinion of the Justices, 247 Ala. 66, 22 So.2d 521, given in 1945, upholding the power of the legislature to provide for public market places, for the sale of commodities and refers this power to the police power of the state. Also cited to the same effect is the Opinion of the Justices reported in 247 Ala. 195, 23 So.2d 505, given in 1945 dealing with the Public Hunting and Forestry Association, Inc., created to preserve the natural resources of the state, reforestation and conservation of the forests of the state. This act was referred to the police power by said opinion.

Section 93 of the Constitution has been thrice amended by the people since it was first put into the Constitution of 1901, carried over from the Constitution of 1875. The first amendment, which may be found in Vol. 1 of the Code of 1940, at page 294, added to said Section 93 the following language: "provided that the State may under appropriate laws cause the net proceeds from the State convict fund to be applied to the construction, repair and maintenance of public roads in the State and the Legislature may also make additional appropriations for that purpose."

Said section was again amended by amendment 12, which may be found on page 307, Vol. 1 of the Code of 1940:

"Section 93. The State shall not engage in works of internal improvement, nor lend money or its credit in aid of such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto; but when authorized by laws passed by the Legislature the state may appropriate funds to be applied to the construction, repair, and maintenance of public roads, highways and bridges in the state; and when authorized by appropriate laws passed by the Legislature the state may at a cost of not exceeding ten million dollars engage in the work of internal improvement, or promoting, developing, constructing, maintaining, and operating all harbors and seaports within the state or its jurisdiction, provided, that such work or improvement shall always be and remain under the management and control of the state, through its State Harbor Commission, or other governing agency. The adoption of this amendment shall not affect in any manner any other amendment to the Constitution of Alabama which may be adopted pursuant to any act or resolution of this session of the Legislature."

This amendment was adopted by the people and proclaimed ratified on November 22, 1922. Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695, 699, was decided March 22, 1928, and in the prevailing opinion in that case, it was stated:

"By constitutional amendment proposed in the act to be found on page 740 of the Acts of 1907, and subsequently, in 1908 [the Acts of 1907, and subsequently in 1908], adopted by a vote of the people, section 93 of the Constitution was amended so as to permit the net proceeds from the state convict fund to be applied to the construction, repair, and maintenance of public roads, and additional appropriations might be made for that purpose. In 1921 section 93 was again amended. Acts 1921, p. 1; In re Opinions of Justices, 209 Ala.

[593] 600, 96 So. 487. This amendment authorized, inter alia, the legislative appropriation of funds for the construction, repair, and maintenance of public roads, highways, and bridges in the state. In 1927, article 20A was added to the Constitution whereby the state was 'authorized to engage in the construction, improvement, repair and maintenance of public roads, highways and bridges.' See Acts 1927, p. 794. In view of these several amendments it cannot in reason be said that the act in question violates the Constitution by permitting the state to engage in works of internal improvement, or otherwise. *By these amendments the state definitely embarked upon a program of internal improvement.* * * *"

Since the opinion cited in brief amici curiæ was given the constitution, Section 93, has again been amended, effective November 14, 1946. Said Section 93 now provides:

"Section 93. The state shall not engage in works of internal improvement, nor lend money or its credit in aid as such, except as may be authorized by the constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the constitution of Alabama, or amendments thereto. When authorized by laws passed by the legislature the state may appropriate funds to be applied to the construction, repair, and maintenance of public roads, highways and bridges in the state. When authorized by appropriate laws passed by the legislature the state may at a cost not exceeding ten million dollars engage in the work of internal improvement, or promoting, developing, constructing, maintaining, and operating all harbors and seaports within the state or its jurisdiction, provided, that such work or improvement shall always be and remain under the management and control of the state, through its state harbor commission, or other governing agency. When authorized by laws passed by the legislature the state may engage in the construction, improvement, repairs and maintenance and

operation of public airports, air landing fields and other air navigation facilities in the state of Alabama and may appropriate money or otherwise provide funds for this purpose. The adoption of this amendment shall not affect in any manner any other amendment to the constitution of Alabama which may be adopted pursuant to any act or resolution of this session of legislature." Code of 1940, Titles 1–6, p. 68, Pocket Part.

It will be noted that said amendment which rewrites section 93 provides: "The state shall not engage in works of internal improvement, nor lend money or its credit in aid as such, except as may be authorized by the constitution of Alabama or *amendments thereto* * * *." Also new to this amendment was the added provision: "When authorized by laws passed by the legislature the state may engage in the construction, improvement, repairs and maintenance and operation of public airports, airlanding fields and other air navigation facilities in the state of Alabama and may appropriate money or otherwise provide funds for this purpose." —[Italics supplied.]

Reduced to its final analysis the question presented: Is the construction or completion of the coliseum a work of internal improvement within the meaning of Section 93 of the constitution as amended by amendment 58, Code of 1940, p. 68, Pocket Part, which provides in part: "The state shall not engage in works of internal improvement * * * except as may be authorized by the constitution of Alabama or amendments thereto; * * *."

The word coliseum is defined in Webster's New International Dictionary Second Ed.; as a : "1. [cap] Colosseum, 1. 2. A theater; a music hall; specif., a large building in which athletic sports may be held; also, a stadium." Also on page 530; Collosseums: 1. Also Coliseum. An amphitheater (the Flavian Amphitheater) built by Vespasipan and Titus about 80 A. D. in great part still standing southeast of the Forum in Rome; applied also to any Roman amphitheater. The Colesseum is an eliptical structure measuring about 615 by 510 feet externally. It consists of rings of arched brick galleries covered within by slopes containing rows of seats which were incrusted with marble. Beneath the arena are the vaults that were used for the attendants, gladiators, beasts, etc. 2 Coliseum."

In State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 334–335, 186 So. 487, 490, 121 A.L.R. 283, it was observed: "Defendant insists that by reason of these historic facts the words 'works of internal improvement' in section 93, supra, should be construed as having reference only to channels of trade and commerce, such as canals, turnpikes, railroads, and the like (citing authority).

"But the language of our Constitution is broad and comprehensive. There are no restrictions or limitations, and we are unwilling to so interpret this provision of our Constitution so as to attach such an exception thereto. We are inclined, however, to agree with defendant that these words have reference to improvements of a more or less fixed and permanent character. (Citing many authorities)."

It was also stated in Re Opinion of the Justices, 247 Ala. 66, 69, 22 So.2d 521, 525, "But the mere benefit to the public is not sufficient if Section 93 of the Constitution creates a barrier." See also In re Opinion of the Justices, 237 Ala. 429, 187 So. 244.

The quoted provisions of § 93, lay a restriction on the power of the legislature in these words: "The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such, *except as may be authorized by the constitution of Alabama or amendments thereto;* * * *." The coliseum as defined and the act contemplates that it shall be a permanent structure to continue to exist, and be maintained for at least 40 years and the statement of fact which we have quoted from the brief shows that it is an improvement of a permanent nature.

The legislature in session and proceeding to legislate in the enactment of laws is the state in operation, engaged in business which it undertakes to promote. If the legislation is in respect to internal improvements it must look to the constitution or an amendment thereof for its authority.

184

Said amendment LVIII quoted above is a limitation on the police power of the state and its legislature to provide by act for the state to engage in internal improvements. The coliseum is certainly not "external" improvement. In the majority opinion in Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 316, 116 So. 695, 699, Justice Sayre, referring to amendments 1 and 12 to Section 93 made the affirmative statement: *"By these amendments the state definitely embarked upon a program of internal improvement."* The proposed law promulgated by H.B. 800 especially provides: "It is hereby declared that it is not intended that this act shall be interpreted as authorizing the board to engage in the business of selling or marketing livestock or products of any kind, or in what may be termed a brokerage business, or to compete with private enterprise." Therefore State ex rel. Wilkinson v. Murphy, cited above, which upheld the establishment of a public market where all the people could meet and engage in sale, barter and exchange of their property, does not sustain the provisions of said proposed H.B. 800. The proposed law directs and authorizes the Governor to convey the existing properties, including the building and grounds on which the coliseum now stands to the corporation and authorizes the corporation to lease the properties after the completion of the coliseum to the "board" as defined in the proposed Acts No. 800 and 801 and authorizes the board to lease the property for use to private individuals, associations and corporations; to raise sufficient funds to meet the obligations of the bonds issued by the corporation and the interest thereon together with the cost of insurance and maintenance. The proceeds of the revenue arising from the leases are deposited in the state treasury in a special account to be drawn out by the board. When the funds thus created amortize the bonds and obligations of the corporation, the act creating the corporation directs its dissolution and vests the title to the entire property in the State of Alabama. The board and the corporation accept such transfer which is affected

with a trust, retaining in the state an equity.

Therefore, if building bridges across the rivers of the state as a part of the public highways thereof and the building of ports and airways are works of internal improvement, the conclusion is inescapable that such coliseum is an internal improvement and the state is engaged in promoting the same through the legislation proposed in said H.B. 800.

I am, therefore, of opinion that the proposed law if enacted would violate § 93 of the Constitution of 1901 as amended by amendment LVIII cited above.

Respectfully submitted,
JOEL B. BROWN,
Associate Justice.