178 So.2d 76

## OPINION OF THE JUSTICES NO. 183.

Supreme Court of Alabama.

Aug. 26, 1965.

The Senate of Alabama
State Capitol
Montgomery, Alabama

Dear Sirs:

We are in receipt of your inquiry of June 11, 1965 in which under Senate Resolution No. 29 you request our opinion on certain constitutional questions relating to Senate Bill No. 216.

Senate Resolution No. 29 reads as follows:

"A resolution requesting the opinions of the Justices of the Supreme Court concerning the constitutionality of Senate Bill No. 216 and proposed Amendment.

"BE IT RESOLVED BY THE SENATE OF ALABAMA, that the opinions of the Justices of the Supreme Court of Alabama are hereby respectfully requested upon the following important constitutional questions relating to Senate Bill No. 216, and proposed amendment (a copy of which bill and amendment are hereto attached) which said bill was introduced in the Senate on May 28, 1965, reported favorably with said amendment by the Senate Judiciary Committee, and which said bill received its second reading in the Senate on June 4:

"1. Will the bonds which the Corrections Institution Finance Authority, authorized to be created and provided for in said bill, constitute a debt created against or incurred by the State of Alabama, or its authority, in violation of Section 213 of the Constitution, as amended?

"2. Assuming that the Kilby Property described in said bill shall be conveyed to the Corrections Institution Finance Authority without any consideration other than that stated in said bill being given therefor, and that bonds of the Authority shall be issued, payable from the proceeds of the sale

or lease of the Kilby Property, as well as rentals from facilities to be constructed by it with bond proceeds, will these circumstances alter your answer to question 1 above?

"3. Assuming that facilities constructed by the Corrections Institution Finance Authority shall be located on unimproved real property conveyed to it by the Governor pursuant to Section 22 of the bill, will these circumstances alter your answer to question 1 above?

"4. Will the year to year lease of correction institution facilities by the Corrections Institution Finance Authority to the Board of Corrections or other state agency, as authorized by Section 24 of the bill, constitute a new debt created against or incurred by the State of Alabama, or its authority, in violation of Section 213 of the Constitution, as amended?

"5. Will the prohibition in Section 24 of the acquisition, construction or lease of any facilities for penal or correctional use in the event that facilities constructed by the Corrections Institution Finance Authority shall be vacant, be valid and binding or will such prohibition make of the year to year lease authorized in said section a new debt created against or incurred by the State, or its authority, in violation of Section 213 of the Constitution, as amended?

"6. Will the construction and leasing by the Corrections Institution Finance Authority, as authorized in said bill, cause the state to engage in works of internal improvement or lend money or credit in aid thereof, in violation of Section 93 of the Constitution, as amended?

"7. Does the bill contain more than one subject in violation of Section 45 of the Constitution?

"8. Is the subject of the bill clearly expressed in its title, as required by Section 45 of the Constitution?"

Senate Bill No. 216 was later amended in the Senate Judiciary Committee so as to include the Lieutenant Governor and the Attorney General of the State of Alabama along with the Governor, the Commissioner of Corrections, and the Director of Finance, with the power to become a public corporation with the power and authority provided for by said Act No. 216. The bill was also amended in other details not necessary here to be noted.

The pertinent provisions of Senate Bill 216 are as follows:

"Section 9. *Authorization of Bonds.* For the purpose of providing funds for the acquisition of sites, for the construction, reconstruction, alteration and improvement of facilities, for the procurement of equipment therefor, and for payment of obligations incurred or temporary loans made for any of said purposes, the Authority is hereby authorized, from time to time, to sell and issue its bonds, not exceeding in the aggregate principal amount, however, Five Million Five Hundred Thousand Dollars ($5,500,000) which said principal amount shall, however, be reduced by the amount of the net proceeds from the sale or rental of all or any part of the Kilby Property, received at or prior to the time the last of the bonds herein authorized shall be issued.

"Section 10. *Temporary Financing.* In anticipation of issuance of bonds hereunder, the Authority may borrow such sums as may be needed, not exceeding Five Hundred Thousand Dollars ($500,000) for the aforesaid purposes and obligate itself by certificate or promissory note, bearing interest at a rate or rates not exceeding 4 per cent per annum and maturing within one (1) year from date. Said certificates or promissory notes shall be payable solely from bond proceeds or

moneys and funds from which bonds are payable.

"Section 18. *Obligations Not a Debt of the State*. All obligations incurred by the Authority and all bonds, notes and certificates issued by it shall be solely and exclusively an obligation of the Authority, payable solely from the revenues and income which may under the provisions of this Act be pledged to the payment thereof. No obligation incurred by the Authority and no bond, note or certificate shall create an obligation or debt of the State.

"Section 22. *Conveyance to Authority by State*. The Governor of the State is authorized to execute and deliver immediately before or simultaneously with the issuance of the first bonds of the Authority an appropriate deed or deeds conveying to the Authority (a) the Kilby Property and (b) any unimproved real property belonging to the State in any county which the Board determines to be needed by the Authority for the construction of facilities. Upon delivery of such deed to the Authority it thereby shall be invested with all right and title that the State of Alabama had in the property conveyed thereby, subject to the right of reverter to the State of all such property except such parts of the Kilby Property as shall be sold as herein authorized, upon the dissolution of the Authority. The Authority shall be entitled to immediate possession of all such unimproved real property upon execution of the deed thereto but it shall not have the right to possession of the Kilby Property or any portion or parcel thereof until such time or times as the Board shall determine that such property or a portion or parcel is not required by it for penal or correctional use. The consideration for said conveyance shall be the Authority's agreement to reconvey to the State all said real property, except portions of the Kilby Property which have been disposed of, with all improvements thereon, free of charge, immediately before the dissolution of the Authority. Since the State will receive back in free rent or earlier reconveyance of facilities the full value of the Kilby Property and since other real property to be conveyed to and utilized by the Authority would otherwise remain unimproved, said consideration is hereby conclusively determined to be valuable, adequate and fair. Immediately prior to its dissolution, the Authority shall also convey to the State all other assets acquired by the Authority, whether by purchase, gift, grant, or otherwise, provided the terms of the grant are not violated thereby.

"Section 23. *Sale or Lease by the Authority of Kilby Property*. The Authority shall have the power and authority to sell and convey or to lease all or any part of the Kilby Property, and, as an aid to such sale or lease, to cause to be prepared by competent real estate experts a land use map and plan. No such sale or lease shall be made, however, except at public offering, on sealed bids or at auction, and upon such published notice as the Authority shall determine to be necessary or desirable in order to attract the greatest interest from prospective bidders. Notice of any public sale or lease shall in any event, be given by publication in at least three newspapers of general circulation published in the State at least three times, the first notice to be published not less than 60 days before the date of such public offering, the second notice to be published not less than 30 days nor more than 40 days before such public offering, and the third notice to be published not less than 10 days nor more than 20 days before such public offering. The award of any property offered for sale or lease shall be made to the highest responsible bidder unless all bids shall be rejected as inadequate

and other public offering shall be made upon notice republished as before. Any sale shall be for all cash or at least one third cash and the balance payable in not exceeding three years and secured by a purchase money mortgage. Each deed or lease to effectuate any such sale or lease shall be signed in the name of the State by the Governor and the Great Seal of the State shall be affixed thereto and attested by the Secretary of State. The proceeds of the sale of any such property shall be used first to pay the reasonable and necessary expenses of sale and the balance remaining shall be paid to the State Treasurer and held by him in the special account for the acquiring of land for, and the constructing, reconstructing and equipping of one or more facilities or, in the event that all bonds herein authorized shall have been issued, for the payment of the principal of or interest on bonds and the redemption price thereof. The principal amount of bonds herein authorized to be issued shall be reduced by the total of the amounts so deposited in such special account prior to the issuance of all such bonds.

"Section 24. *Leases of Facilities between The Authority and State Agencies.* The Authority is hereby authorized to enter into a lease or leases of any one or more facilities constructed by the Authority under the provisions of this Act to and with the Board and any other agency, board, commission, bureau or department of the State which may be charged with the responsibility for the operation of any of the penal or correctional institutions of the State. The Board, and any such other agency, board, commission, bureau or department of the State and each of them are hereby authorized to lease any such facilities from the Authority. No such lease shall, however, be for a term longer than the then current fiscal year of the

State, but any such lease may contain a grant to the State or its agency of successive options of renewing said lease on the terms specified therein for any subsequent fiscal year or years of the State; provided that liability for the payment of rent shall never be for a term longer than one fiscal year. Rent payment by the State or any of its agencies shall be due in advance on the first day of the fiscal year and shall, upon being so paid, entitle the state or such agency to quiet possession of the facilities leased for the remainder of such fiscal year. The rent for each fiscal year during which said lease agreement shall be in effect shall be due in advance on the first day of the fiscal year, and said rent for such fiscal year shall be payable, and any such covenant on the part of the State or any of its agencies shall be performed, solely out of the current revenues of the State for such fiscal year.

"The rent payable and the covenants to be performed by the State or any of its agencies under the Provisions of said lease shall never create a debt of the State within the meaning of the constitution. In the event that there shall be any default in the payment of any rent required to be paid or in the performance of any covenant required to be performed by the State or any of its agencies under the provisions of any such lease, while such lease is in effect, the Authority and any pledges of such lease may, by any appropriate proceedings at law or in equity, instituted within the time permitted by law, enforce and compel the payment of such rent and the performance of such covenants. No free use shall be made of any facilities of the Authority so long as the principal of or interest on any bonds, including refunding bonds, issued by the Authority remains unpaid. In the event that any facility of the Authority should become vacant or not be used by the State or one of

its agencies, then neither the State nor any agency, board, bureau, commission, public corporation or department of the State shall rent, purchase, acquire, construct or lease any facility for penal or correctional use or renew any lease of any facility for penal or correctional use, nor shall it use any such facility other than those of the Authority, so long as any facility of the Authority shall remain vacant or unused.

"Section 26. *Security for Bonds.* The principal of and interest on the Bonds shall be secured by a pledge of any or all of the following receipts, as the Authority may determine:

"(a) The rent and revenue for the use of one or more facilities of the Authority;

"(b) The net rent or sale proceeds from the Kilby Property;

"(c) Any bond proceeds remaining unexpended upon completion of all facilities to be constructed with such bond proceeds, and the payment of the cost thereof;

"(d) Any insurance proceeds which the Authority may receive by reason of its ownership of any of the facilities. The Authority shall have authority to transfer and assign any lease of any of the facilities and any lease or mortgage of the Kilby Property as security for the payment of such principal and interest. The Bonds may be issued under and secured by a resolution which may, but need not, provide for an indenture of trust covering one or more facilities of the Authority. Such resolution or such indenture of trust may contain any provision or agreement customarily contained in instruments securing evidences of indebtedness, including, without limiting the generality of the foregoing, provisions respecting the collection and application of any receipts pledged to the payment of bonds, the terms to be incorporated in lease agreements respecting the facilities, the maintenance and insurance thereof, the creation and maintenance of reserve and other special funds from such receipts, and the rights and remedies available in the event of default to the holders of the bonds or to the trustee for the holders of the bonds or under any indenture of trust, all as the Authority may deem advisable and as shall not be in conflict with the provisions of this Act; provided, however, that in making such agreements or provisions the Authority shall not have the power to obligate itself except with respect to its facilities, the Kilby Property and the application of the receipts which it is herein authorized to pledge. If there be any default by the Authority in the payment of the principal of or interest on the bonds or in any of the agreements on the part of the Authority which may properly be included in any resolution or indenture of trust securing such bonds, any holder of any of the bonds or any of the coupons or the Trustee for the bondholders under any resolution or indenture of trust, if so authorized therein, may either at law or in equity, by suit, action, mandamus or other proceeding, enforce payment of such items and compel performance of all duties of the directors and officers of the Authority, and shall be entitled, as a matter of right and regardless of the sufficiency of any such security or the availability of any other remedy, to the appointment of a receiver in equity with all the power of such receiver for the maintenance, insurance, and leasing of the facilities and property covered by such resolution or such indenture of trust and the collection and application of the receipts therefrom; provided that no such resolution or indenture of trust shall grant any lien or mortgage subject to foreclosure, nor shall such resolution or indenture of trust be construed so as to compel the sale of any of the facilities or

property covered thereby or any part thereof in satisfaction of the bonds secured thereby. Any such resolution or indenture of trust may contain provisions regarding the rights and remedies of any trustee thereunder and the holders of the bonds and coupons and may contain provisions restricting the individual rights of action of the holders of the bonds and coupons.

"Section 29. *Dissolution of the Authority.* When all bonds and securities issued by the Authority and all obligations assumed by it under the provisions of this Act shall have been paid in full, the then president of the Authority shall thereupon execute and deliver in the name of and in behalf of the Authority an appropriate deed or deeds, to which the seal of the Authority shall be affixed and attested by the secretary of the Authority, conveying to the State all the buildings, properties and other assets then owned by the Authority. The then officers and directors of the Authority shall at such time file with the Secretary of State a written statement, subscribed and sworn to by each of them, reciting the payment in full of all bonds theretofore issued by the Authority and the execution and delivery of such deed or deeds to the State, which statement shall be filed by the Secretary of State and recorded with the certificate of incorporation of the Authority, and thereupon the Authority shall stand dissolved."

The main purpose of Senate Bill 216 is to establish the maximum security building of the state penitentiary and cotton mill, presently located on the Kilby Prison property, to other property now owned by the State of Alabama. The maximum security building will be located on the state prison farm at Atmore, and the site of the new cotton mill will be at Speigner.

Senate Bill 216 provides a legislative framework for a plan to convert Kilby prison into a modern new penal system located farther away from the growing urban area of Montgomery. The City of Montgomery has expanded to the extent that the potential value of the Kilby property has enhanced beyond the point to where it is economically feasible for the state to continue its use for prison facilities and farming. There are other obvious and potent reasons for relocating Kilby Prison.

The pertinent provisions of Senate Bill 216 are set out above.

Senate Resolution 29 poses three queries as to whether the proposed bonds will violate Sec. 213 of the Constitution, as amended.

We are of the opinion that the bonds of the Corrections Institution Finance Authority, a separate corporate entity of the state, authorized to be created and provided for in Senate Bill 216, payable from rental income derived from buildings and facilities constructed with the bond proceeds, are not a debt of the state.

It was said in Opinion of the Justices, 252 Ala. 465, 41 So.2d 761, that the bonds of the Alabama State Employment Security Corporation, payable from the lease rentals of a state office building, were not debts created against, or incurred by, the state, or its authority, within the meaning of Sec. 213, Constitution of 1901, as amended.

It was also said that bonds of the Agricultural Center Corporation, a separate corporate entity, payable from rents derived from the leasing of the Montgomery Livestock Coliseum by the Corporation to the Agricultural Center Board did not create a debt of the state. In re Opinion of the Justices, 256 Ala. 170, 54 So.2d 68. To like effect is the Opinion of the Justices reported in 275 Ala. 254, 154 So.2d 12. Therefore, we answer your inquiry No. 1 in the negative.

It seems logical to answer the third question posed by Senate Resolution 29 before proceeding to the second question posed by the Resolution.

The third question asks the Justices to assume that the Governor will use the authority granted him by Senate Bill 216 and convey to the Alabama Corrections Institution Finance Authority unimproved real property and that the Authority will locate the proposed new facilities on lands so conveyed. And as stated above, it is contemplated that the site for the new maximum security building will be on the Atmore State Prison Farm, at Atmore, Alabama, and the site for the new cotton mill will be at Speigner on property now owned by the State of Alabama.

It seems clear that the conveyance to the Corrections Institution Finance Authority by the State of Alabama of the real property upon which the improvements are to be constructed by a separate corporate entity does not make the bonds of such separate corporate entity a debt within the meaning of Sec. 213 of the Constitution, as amended. See authorities, supra; also Keller v. State Board of Education, 236 Ala. 400, 183 So. 268; Norton v. Lusk, 248 Ala. 110, 26 So.2d 849; Harman v. Alabama College, 235 Ala. 148, 177 So. 747.

The location of the revenue producing facilities on the property of the state does not make the bonds payable from the revenues of such facility a debt of the state within the meaning of Sec. 213, as amended. The answer to Question No. 3 is no.

The second question posed by Resolution 29 is stated above and will not be repeated here.

In answering this question, we find that it assumes an additional factor, viz., that, pursuant to the authorization of Senate Bill 216, the Kilby property should also be conveyed to the Corrections Institution Finance Authority by the Governor, without consideration other than that stated in Senate Bill 216.

The consideration so stated is the undertaking of the Authority to reconvey to the State the Atmore and Speigner sites, and all unsold parts of the Kilby property on payment of the obligations of the Authority and before dissolution. In these circumstances, an asset or property now owned by the state will serve as a financial base for the construction of the new prison facilities by the Corrections Institution Finance Authority. While the authority is a separate corporate entity, it does receive a state asset to aid it in its financing.

We take note of such decisions as the Town of Opp v. Donaldson, 230 Ala. 689, 163 So. 332, and the City of Mobile v. Board of Water and Sewer Commissioners, 258 Ala. 669, 64 So.2d 824. See also Opinion of the Justices, 266 Ala. 78, 93 So.2d 923. But in the case of Chamberlain v. Board of Commissioners of the City of Mobile, 243 Ala. 662, 11 So.2d 724, the Justices held that the case of Chamberlain was not controlled by the line of cases by which the Town of Opp v. Donaldson, supra, is typical.

It was stated in Opinion of the Justices, 256 Ala. 170, 54 So.2d 68:

"Some suggestion has been made in consultation that for the State to convey the coliseum property which it is sought to be assumed produces some revenue in its present incompleted state and for the public corporation to then pledge the entire revenue when the property is completed to the payment of the revenue bonds would constitute a debt within the meaning of Section 213 of the Constitution. We can rationalize no distinction between the status treated in Opinion of the Justices, 252 Ala. 465, 41 So.2d 761 and that here presented. In that opinion we dealt with and approved a proposed conveyance by the State to the Alabama State Employment Security Corporation of land adjacent to or in the vicinity of the capitol. We did not predicate any conclusion upon our opinion with reference to the income producing potentiality of the facility to be conveyed to the public corporation dealt with in.

that opinion and there was no evidential data respecting the property's present or potential value as income producing. Here, however, we do have specific data indicating that the coliseum property produces no net revenue since the Act pursuant to which the facility was acquired and constructed specifically provides that the income from its utilization 'shall not be made with a view of producing any revenue or profit * * *, but shall be based exclusively upon reasonable cost of operation and maintenance * * *.' Act No. 282, General Acts 1945, p. 447, § 2.

"We deem it not out of place to mention also that if said bill is duly passed in pursuance of valid legislative procedure and approved by the Governor, it will in effect become the law of Alabama, and in legal effect the provisions of the act will be written into the bonds issued thereunder and become a part of the contract between the purchasers of the bonds and the corporation. On its face it positively provides that said bonds shall not become a debt of the State nor a charge against its general credit, or its taxing power. Therefore all persons dealing in respect to such bonds must take notice of these provisions which the legislature intends to govern the validity of said bonds."

The Kilby property is not presently a source of net income to the state. On the contrary, it is a liability in that the state appropriates from its general fund to support the prisons and activities there conducted.

Stripped of the legal technicalities necessitated by this particular means of financing a new prison system, all the bill does is to authorize the conversion of the Kilby property into money in order that it may be reconverted into a new prison system. The maximum security building and an adequate place of inside employment, such as the cotton mill, must be replaced before prisoners can be contained and the Kilby property released for sale. The authorization of the Authority, with its power to anticipate sale and rental proceeds of the Kilby property, is a means to this legitimate end. It does not in any way involve the state's credit or the general fund. The existing prison facilities are being moved to a new site. The old site pays the cost, but the new site must be put in use before the old site can be sold. Neither the general fund nor any other revenue or resource of the state will stand for the debt. No obligation is imposed on the state to pay money. The substance of the transaction therefore does not offend or vitiate any requirement of Sec. 213 of the Constitution, as amended, nor will the state's credit be jeopardized or affected in any way.

■ The fourth query posed by Senate Resolution 29 concerns the leases of correctional institution facilities authorized by Sec. 24 of Senate Bill 216. It is contemplated that the Corrections Institution Finance Authority will lease to the Board of Corrections or other agency the new prison facilities on a year to year basis, the rental therefor being paid from current income. All obligations by the State Board of Corrections or other state agency is strictly limited and can be payable only out of current revenues of the state for such fiscal year.

Such a year to year lease was considered and sustained in In re Opinion of the Justices, 252 Ala. 465, 41 So.2d 761. This Court has also upheld a municipal contract by the City of Mobile to purchase water as not creating a debt of the City within the meaning of Sec. 225 of the Constitution, by construing it as limiting payment to revenues from each fiscal year as water is received. Hillard v. City of Mobile, 253 Ala. 676, 47 So.2d 162.

We answer your fourth inquiry in the negative.

■ Question 5 posed in Senate Resolution 29 is directed at the provisions of Sec. 24 of Senate Bill 216, which prohibit free use of any facilities constructed by the Authority so long as any of its bonds are outstanding and unpaid, and state that in the event of any vacancy or nonuse by the state, the state is prohibited from acquiring other similar facilities. This limitation is a restriction on the freedom of action of the Board of Corrections and is clearly within the province of the Legislature, and in no way could be considered to create a financial obligation on the part of the state.

■ A similar question was considered in Opinion of the Justices, 252 Ala. 465, 41 So.2d 761, and was there upheld as not creating a debt of the state.

Your inquiry No. 5 is answered in the negative.

"The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto, * * *."

Public roads, highways and bridges, harbors and seaports, airports, landing fields and other air navigation facilities are excepted. Sec. 93 is intended to forbid the state from going into competition with private enterprise or lending its money or credit in aid thereof. Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Rogers v. Garlington, 234 Ala. 13, 173 So. 372; Mead v. Eagerton, 255 Ala. 66, 50 So.2d 253; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283; In re Opinion of the Justices, 247 Ala. 66, 22 So.2d 521; In re Opinion of the Justices, 247 Ala. 195, 23 So.2d 505; In re

Opinion of the Justices, 256 Ala. 170, 54 So. 2d 68.

We answer your sixth inquiry in the negative.

Questions 7 and 8 concern Sec. 45 of the Constitution of Alabama 1901.

■ Without a prolongation of discussion, we hold that an examination of Senate Bill 216 reveals no subject or material covered in the Bill which is not clearly indicated in the title. See Rogers v. Garlington, supra; Atkinson v. City of Gadsden, 238 Ala. 556, 192 So. 510; Newberry v. City of Andalusia, 257 Ala. 49, 57 So.2d 629. Senate Bill 216 contains but one subject, prison financing, clearly expressed in the title. Therefore, your inquiries 7 and 8 are answered in the negative.

Respectfully submitted,

J. ED LIVINGSTON
Chief Justice
ROBERT TENNENT SIMPSON
PELHAM J. MERRILL
ROBERT B. HARWOOD
Associate Justices