22 So.2d 521

**In re OPINION OF THE JUSTICES.**
**No. 68.**

Supreme Court of Alabama.
June 12, 1945.

The Honorables Chief Justice and Associate Justices of the Supreme Court of Alabama,

Judicial Department,
Montgomery 4, Alabama

Gentlemen:

Important constitutional questions have arisen in connection with Act No. 32, House No. 30, approved May 21, 1943, General Acts 1943, page 25, Code 1940, Tit. 2, § 415(1) et seq., creating the Alabama State Markets Board.

In pursuance of Title 13, Section 34, Code of Alabama, 1940, I request your written opinion as to the following constitutional questions, to-wit:

1. Would the construction of market facilities by the board, created by the above mentioned act, be engaging in works of

internal improvement by said board as contemplated by Section 93 of the Constitution of 1901?

2. Does the Markets Act, and Sections 3 and 6 thereof, have the effect of engaging the State in works of internal improvement?

3. By virtue of the act, and the carrying out of the provisions thereof, is the State interested in any private or corporate enterprise in violation of Section 93 of the Constitution of 1901?

Respectfully submitted,<br>
Chauncey Sparks<br>
Governor of Alabama.

The act under consideration is as follows:

"An Act

To promote the agricultural interests of the State of Alabama by providing for the inspection, grading, standardization, classification, refrigeration, dehydration (for both food and feed), canning, packing, processing, cold storage, and marketing of agricultural products, including all staple food crops, fruits, vegetables, poultry, dairy products, fish, and kindred products; and for such purposes to create a public board, to be known as the Alabama State Markets Board, to provide for the acquisition, equipment, operation, and maintenance of a public market or markets; to define the duties, powers, and authority of said board; and to appropriate public funds for such purposes.

*"Be it Enacted by the Legislature of Alabama:*

"Section 1. There is hereby created a State board to be known as the Alabama State Markets Board, to consist of the Commissioner of Agriculture and Industries and four other members to be appointed by the Governor, two of whom shall be farmers, representing the agricultural interests of the State of Alabama, and two of whom shall be persons representing the consuming public. The members of the board appointed by the Governor shall be qualified electors of the State of Alabama and shall hold office concurrently with the term of the Governor, and until their successors are appointed, and such successors shall hold office for a term of four years. Any vacancy upon said board shall be filled by the Governor by appointment for the unexpired term.

Each member of the board appointed by the Governor for attendance upon meetings of the board shall receive twenty-five dollars per diem and necessary traveling expenses, but in no case in excess of twelve hundred dollars annual aggregate compensation and expenses, to be paid as hereinafter provided. The Commissioner of Agriculture shall be paid fifty dollars ($50.00) per month for his ex-officio services to the above board.

"Section 2. The Governor shall appoint said members of the board at any time after the passage and approval of this act, and thereupon they and the Commissioner of Agriculture and Industries shall meet in the City of Montgomery for the purpose of organizing the board and adopting such rules and regulations for their future activities hereunder as may be necessary and proper and not inconsistent with the terms and purposes of this act.

"Section 3. The board is hereby authorized to acquire by purchase, donation, lease, or condemnation, for and in the name of the State of Alabama, a suitable site or sites, accessible to highways and railroad and air terminal facilities, and to erect and install thereon such structures, facilities, and equipment as may be necessary for the inspection, grading, standardization, classification, refrigeration, dehydration (for both food and feed), canning, packing, processing, cold storage, and marketing of agricultural products, including all staple food crops, fruits, vegetables, poultry, dairy products, fish, and kindred products, and to let or lease space and facilities in such markets for the storage of such products pending inspection, grading, packing, canning, processing, classification, refrigeration, dehydration of such products (for both food and feed), and marketing, and to make such charges for such space, services, and facilities, as will cover the reasonable costs of operation and maintenance of such markets, equipment, and facilities; provided, however, that such charges shall not be made with a view to producing any revenue or profit to the State of Alabama or to the board but shall be based exclusively upon the reasonable cost of operation and maintenance, as aforesaid, and liquidation of costs of construction.

"Section 4. All collections of such charges shall be deposited monthly in the State treasury to the credit of the Agricultural Fund as now defined by law, and shall be used solely for payment of the expenses

of operation and maintenance, and liquidation of costs of construction of such markets and facilities, upon requisition, as hereinafter provided, upon the State Comptroller and to be paid by the warrant of the comptroller upon the treasury.

"Section 5. The board is authorized to appoint an executive officer of the board to be known as the Director of State Markets. It shall be the duty of the Director of State Markets to manage and control such markets as may be established hereunder, subject to the supervision of the board, and to employ, subject to the approval of the board, such employees, subject to the provisions of the Merit System Act, as may be necessary for the efficient and economical operation and maintenance of such markets. The Director of State Markets shall receive such salary as may be fixed by the board not exceeding five thousand dollars ($5,000.00) annually, and shall devote his entire time and attention to the discharge of his duties as such director. He shall attend all meetings of the board and keep minutes thereof, and shall have custody of its books, records, papers, and accounts.

"Section 6. For the aforementioned purposes there is hereby appropriated out of the Agricultural Fund in the State treasury the sum of one hundred thousand dollars ($100,000.00) and, in addition thereto, out of the General Fund of the State treasury the further sum of two hundred thousand dollars ($200,000.00), said appropriations to be released only upon the approval and at the discretion of the Governor; provided, in the event there should be in excess of one hundred thousand dollars ($100,000.00) in said Agricultural Fund at the time of the release of said appropriations by the Governor, that the amount to be appropriated and released from the General Fund may be decreased to the extent of such excess over and above one hundred thousand dollars ($100,000.00) in the Agricultural Fund, it being the intent hereof that only three hundred thousand dollars ($300,000.00) shall be the total amount of the appropriation hereunder out of both the Agricultural and the General Funds; and provided further that all moneys appropriated and released and paid hereunder out of the General Fund shall be repaid and reimbursed to the General Fund out of the Agricultural Fund, without interest, from time to time and at such time as in the judgment of the board the condition of the Agricultural Fund will permit, consistent with the efficient and economical operation of such market, or markets, and market facilities. All excess of charges and fees over and above the cost of maintenance and support and repair shall be used to liquidate the cost of construction of said markets and facilities. This appropriation shall be available on and after October 1, 1943.

"Section 7. Upon the passage and approval of this act the surpluses of monies in the Agricultural Fund derived from the operation under the Alabama State Markets Board over and above those otherwise heretofore appropriated or obligated shall be impounded and held inviolate until the appropriations mentioned in Section 6 above, has been released and paid as hereinabove provided.

"Section 8. All surveying and engineering services in connection with the construction of roads, approaches, and paving connected with such market or markets shall be furnished by and shall be rendered under the supervision of the State Highway Department, without charge to the State Markets Board, and all labor for construction of such roads, approaches, and paving shall be furnished without charge by the State Department of Corrections and Institutions.

"Section 9. If any section, clause, provision, part, or portion of this act shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such invalidity or unconstitutionality shall not effect any other section, clause, provision, part, or portion of this act which is not of itself invalid or unconstitutional, and it is hereby declared that the other parts or sections or provisions hereof would have been enacted regardless of any section which might be held invalid or unconstitutional.

"Section 10. All laws and parts of laws in conflict herewith are hereby appealed.

"Section 11. This act shall take effect immediately upon its passage and approval, or upon its otherwise becoming a law.

"Approved May 21, 1943."

Honorable Chauncey Sparks,
Governor of Alabama,
State Capitol,
Montgomery, Alabama.

Dear Sir:

We acknowledge receipt of your communication of June 4th, in which you re-

quest our written opinion on certain constitutional questions in connection with Act No. 32, H. 30, approved May 21, 1943, General Acts 1943, page 25, Code 1940, Tit. 2, § 415(1) et seq., creating the Alabama State Markets Board.

 In reply we wish to advise that in our opinion: (1) the construction of market facilities by the Board, created by the aforesaid act, is not engaging in works of internal improvement by the Board within the contemplation of Section 93 of the Constitution of 1901; (2) Sections 3 and 6 of the aforesaid act do not have the effect of engaging the State in works of internal improvement; and (3) the carrying out of the provisions of the act by the State does not make the State interested in any private or corporate enterprise in violation of Section 93 of the Constitution of 1901. We reach these conclusions because we consider that the authority granted by the aforesaid act is within the police power of the State.

 Our general approach to a consideration of a legislative act in the light of the Constitution has been well stated by this Court as follows:

"The courts, in the exercise of their power to annul a statute which contravenes the organic law, have uniformly recognized that the power is a delicate one, and to be used with great caution. And it must be borne in mind also that legislative power is not derived from either the State or Federal Constitution. These are only limitations upon power. Apart from the limitations imposed by these fundamental charters of government, the power of the legislature has no bounds, and is as plenary as that of the British Parliament.

"Or to state it differently, all that the legislature is not forbidden to do by the organic law, state or federal, it has full competency to do. And in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a co-ordinate branch of the government. All of which is embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond a reasonable doubt that it is violative of the fundamental law." State v. Murphy, 237 Ala. 332, 334, 186 So. 487, 489, 121 A.L.R. 283.

 This Court has refused to place a limit on the police power of the State, because "it represents the state's great reserve power, and is at all times coextensive with the necessities of the case and the safeguard of the public interest." Franklin v. State, 232 Ala. 637, 169 So. 295, 298. We have said that the police power "casts on the legislature the peculiar function of ascertaining and determining when the welfare of the people needs its exercise, that it is not paramount to the Constitution, yet its exercise is never interfered with unless plainly in conflict with the higher law." Pickett v. Matthews, 238 Ala. 542, 192 So. 261, 264.

 Legislative power to regulate as well as to establish markets is recognized as being within the police power of the state. 35 Am.Jur. 136; Ex parte Byrd, 84 Ala. 17, 4 So. 397, 5 Am.St.Rep. 328; In re Opinion of the Justices, 237 Ala. 429, 187 So. 244; Natal v. Louisiana, 139 U.S. 621, 11 S.Ct. 636, 35 L.Ed. 288. It can hardly be denied that the public interest lies in the protection and promotion of agriculture. The welfare of the people is so inextricably tied up with agriculture, as to make its well-being a matter of governmental concern. It is sufficient to mention the need to increase prices of farm products in order to stimulate production and thus protect the food supply of the people. North Dakota-Montana Wheat Growers Association v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484, 1491. This is a matter of common knowledge. There can be no doubt that the provisions of Sections 3 and 6 of the act in question are in the public interest. Structures, facilities, and equipment for "the inspection, grading, standardization, classification, refrigeration, dehydration (for both food and feed), canning, packing, processing, cold storage, and marketing of agricultural products, including all staple food crops, fruits, vegetables, poultry, dairy products, fish, and kindred products," are for the general welfare and the promotion of the public interest through stimulation of agriculture and protection of its products.

But the mere benefit to the public is not sufficient if Section 93 of the Constitution creates a barrier. The material provisions of Section 93 of the Constitution of 1901 are as follows: "Sec. 93. The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; nor shall the state be interested

in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation."

The evils at which Section 93 of the Constitution were directed are well known. The framers of the Constitution were determined that financial disaster should not come to the State through the acts of reckless officials by subscription to enterprises supposed ·to· serve the public good, yet in truth dominated by private interest. Are, then, the beneficent activities authorized by the act in conflict with Section 93 of the Constitution? Will the State, through the Board authorized by the act, be engaged in works of internal improvement or be interested in private enterprise, if it carries into effect the things authorized by the act? It is clear that such will not be the result. Under the terms of the act, revenue or profit to the State is renounced and such charges as are provided for in the act "shall be based exclusively upon the reasonable cost of operation and maintenance * * * and liquidation of costs of construction," and the act is not to be interpreted as authorizing the State to engage in selling or marketing of products, or in what may be termed a brokerage business.

The views here expressed are not in conflict with previous decisions of this Court. In the case of Goode v. Tyler, 237 Ala. 106, 186 So. 129, there was no act of the Legislature before the Court, and consideration of Section 93 of the Constitution was specifically declared to be unnecessary. In re Opinion of the Justices, 237 Ala. 429, 187 So. 244, properly interpreted, is not to the contrary, as in the proposed act there considered, · revenue or profit to the State was not renounced and charges above the cost of maintenance, support and repairs, limited to the cost of construction of markets and facilities. And for aught appearing, said proposed act then considered merely contemplated the bare establishment of a produce market rested on a competitive basis with private enterprise, as had just recently been considered and decided by the Court in Goode v. Tyler, supra, and contained no provisions indicating any matter of inspection, grading, standardization, classification, refrigeration, dehydration, and such safeguards intended for the protection of the public as well as for the promotion of agriculture.

On the contrary, our decision in State v. Murphy, 237 Ala. 332, 186 So. 487, 496, 121 A.L.R. 283, supports the position here

taken. We there said: "Time moves on, and government takes account of the measured step of progress for the application of the police powers to meet new public needs." If the operation of the State liquor stores does not come within the ban of Section 93 of the Constitution, as there held by us, surely the benefits to agriculture and through this the benefits to the people of the State under the ·present act, will not be banned by Section 93 of the Constitution.

Respectfully submitted,

LUCIEN D. GARDNER
Chief Justice.
WILLIAM H. THOMAS
JOEL B. BROWN
ARTHUR B. FOSTER
J. ED. LIVINGSTON
DAVIS F. STAKELY
ROBERT T. SIMPSON
Associate Justices.