371 So.2d 904 (1979)
ASSOCIATED INDUSTRIES OF ALABAMA, INC., an Alabama Corporation, et al.
v.
Robert BRITTON, as Commissioner, etc., et al.
77-600.
Supreme Court of Alabama.
June 1, 1979.
*905 Fournier J. Gale, III and H. Thomas Wells, Jr., Birmingham, for appellants.
Robert A. Huffaker, Montgomery, for appellees.
BEATTY, Justice.
This is an appeal from a decree upholding the constitutionality of the "Prison-Made Goods Act of Alabama" (Acts 1976, No. 286) and denying injunctive relief. We affirm.
The issues on this appeal are:
1. Whether the Act is unconstitutional; and
2. Whether the prison industries are being operated in violation of the Act.

1. The Constitutional Issues.
The pertinent provisions of the Act follow:
§ 14-7-7. It is hereby declared to be the intent of this chapter:
(1) To provide more adequate, regular and suitable employment for the vocational training and rehabilitation of the prisoners of this state, consistent with proper penal purposes;
(2) To utilize the labor of prisoners for self-maintenance and for reimbursing this state for expenses incurred by reason of their crimes and imprisonment; and
*906 (3) To effect the requisitioning and disbursement of prison products directly through established state authorities without possibility of private profits therefrom.
§ 14-7-8. The Alabama board of corrections is authorized to purchase in the manner prescribed by law, equipment, raw materials and supplies and to engage the supervisory personnel necessary to establish and maintain for this state at the penitentiary or any penal farm or institution now or hereafter under the control of said board industries for the utilization of services of prisoners in the manufacture or production of such articles or products as may be needed for the construction, operation, maintenance or use of any office, department, institution or agency supported in whole or in part by this state and the political subdivisions thereof.
§ 14-7-13. (a) On and after August 13, 1976, all offices, departments, institutions and agencies of this state which are supported in whole or in part by this state and political subdivisions thereof shall purchase from the Alabama board of corrections all articles or products required by such offices, departments, institutions, agencies or political subdivisions of this state produced or manufactured by the said board of corrections with the use of prison labor, as provided for by this chapter, and no such article or product may be purchased by any such office, department, institution or agency from any other source, unless excepted from the provisions of this section as provided in section 14-7-14. All purchases made by state agencies shall be made through the finance department upon requisition by the proper authority of the office, department, institution or agency.
(b) Political subdivisions of this state may purchase directly from the board of corrections.
§ 14-7-16. In keeping with the primary objective of vocational training and rehabilitation of prisoners, the articles or products manufactured or produced by prison labor in accordance with the provisions of this chapter shall be devoted, first, to fulfilling the requirements of the offices, departments, institutions and agencies of this state which are supported in whole or in part by this state and, secondly, to supplying the political subdivisions of this state with such articles and products.
§ 14-7-22. (a) On and after August 13, 1976, it shall be unlawful to sell or offer for sale on the open market of this state any articles or products manufactured wholly or in part in this or any other state by prisoners of this state or any other state, except prisoners on parole or probation.
(b) Any person who willfully violates the provisions of subsection (a) of this section shall be guilty of a misdemeanor and, upon conviction, shall be confined in jail for not less than 10 days nor more than one year or shall be fined not less than $10.00 nor more than $500.00 or both, in the discretion of the court.
Although the point is not controlling we must observe that legislation has existed in this state for a number of years authorizing the operation of penal industries. See Alabama Code of 1940 (Recomp.1958), Tit. 45, § 10(9). The present Act readopts part of those provisions. Their existence is not unique; other states have strikingly similar laws; e.g., Ariz.Rev.Stat., § 41-1621 et seq.; Ark.Stat.Anno., § 46-235 et seq.; Colo.Rev.Stat., § 27-25-101 et seq.; as does the United States government. 18 U.S.C. § 4121.
The first issue of unconstitutionality concerns Sec. 93 of the Alabama Constitution of 1901 (as amended by Amendment 58):
The state shall not engage in works of internal improvement, nor lend money or its credit in aid as such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its *907 credit to any individual, association, or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto. ...
The plaintiffs maintain that the Act offends this provision by contemplating the establishment of a competitive business enterprise, one which "may potentially yield revenue or profit" to the state. We have been cited to Opinion of the Justices, 237 Ala. 429, 187 So. 244 (1939) and Opinion of the Justices, 247 Ala. 66, 22 So.2d 521 (1945) for the test to be applied, i.e., whether the operation of the enterprise was designed to make a profit.
Consideration of those opinions, however, does not lead to the conclusion that the prison enterprises established under the Act are designed as profit-making operations. In Opinion of the Justices at 237 Ala. 429, 187 So. 244 we were concerned with legislation establishing state-operated markets for the sale of agricultural produce to the public. In that advisory opinion describing the bill as offensive to Section 93 it is obvious that this Court considered that its purpose was to authorize state government to engage in competitive business. Reference was made in that opinion to State v. Murphy, 237 Ala. 332, 186 So. 487 (1939) (upholding legislation establishing state liquor stores) for this Court's analysis of Section 93:
The interest referred to [in Section 93] is a pecuniary interest in any private or corporate enterprise, and this prohibition was ... inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters.
Applying this postulate to the enterprise at hand, clearly it is not constitutionally offensive under Section 93. The Act itself belies any purpose to operate the program for profit. Its stated intent is "self-maintenance" and reimbursement, not profit. Its announced "primary objective" is "vocational training and rehabilitation." Sales upon the open market are prohibited. Thus it is neither a "business enterprise" nor one which ordinarily might be expected to be undertaken for profit. Cf. Opinion of the Justices, 256 Ala. 170, 54 So.2d 68 (1951). Indeed, the products may be sold only to state and local government agencies and, hence, cannot reasonably be viewed as creating a state interest in private or corporate enterprise.
The plaintiffs concede that Section 93 does not preempt the operation of the state's police power; plaintiffs do assert, however, that this Act is not a legitimate exercise of that power. We cannot agree with that conclusion. The police power of the state is co-extensive with the public interest to be safeguarded, cf. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944), and the employment of prison inmates in vocational and rehabilitative pursuits is directly related to public safety and welfare. Any "profit" seemingly generated through such an operation, whether used to purchase supplies or placed in the State General Fund, must be considered with the purpose of the Act that is, to rehabilitate the inmates and to reimburse the state. Speculation concerning the state's profit-making potential in such an undertaking, we respectfully suggest, is not an acceptable substitute for evidence of profit ("gross" or "net") itself after considering the cost of law enforcement and institutional operation. Although the record does contain evidence of sales volume and profit margins, that evidence does not establish expected profits to the State after allowing for those costs. Any concern for the generation of profit, we conclude, is a secondary consideration, the primary aspect of the legislation being well within the police power and, accordingly, constitutionally permissible. Murphy, supra.
*908 Nor does the Act offend Section 69 of the Constitution. That section requires:
All stationery, printing, paper .. used in the ... departments of government shall be furnished and the printing ... shall be performed under contract, to be given to the lowest responsible bidder ....
Section 69 does not purport to circumscribe the police power of the state; consequently the bidding requirement contained therein can have no application to prison-produced goods. Additionally, Section 69 simply changed the manner in which public printing was done, i.e., from being performed by a state printer chosen by the legislature to performance under contract. As stated in Brown v. Seay, 86 Ala. 122, 5 So. 216 (1889) (construing substantially the same provision in the Constitution of 1875) the provision is not self-executing but requires supplemental legislation regulating the public printing. It is significant that the existence of Section 69 has not been viewed by the Legislature as requiring competitive bidding on printing and supplies for the State Capitol Complex, for that body in 1973 enacted such a statute authorizing a printing operation by the State Finance Department. Code of Ala.1975, § 41-4-240, 241. It follows that the Legislature has exercised a similar option in this instance, further delineating the application of Section 69. Their action is consistent with the view implicitly contained in Brown v. Seay, supra, that Section 69 operates to require contracts when printing is performed for state government by private enterprise, but it does not preclude a state agency from performing printing services for another state agency.
The plaintiffs also contend that the Act violates the requirement of Section 45 of the Constitution that:
Each law shall contain but one subject, which shall be clearly expressed in its title ....
It is argued that the operation of the Act goes beyond that expressed in its title, that it is overbroad, and that the title is misleading because it is unclear.
We have repeatedly held that this section must receive a reasonable construction so as not to cripple legislation by prohibiting the insertion of matters not included in the title but proper for the accomplishment of the object expressed. Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694 (1951). Accordingly, this requirement of the Constitution has received a liberal interpretation, Knight v. West Ala. Environmental Imp. Auth., 287 Ala. 15, 246 So.2d 903 (1971). Thus, when there is a fair expression of the general subject of the Act in its title, all matters reasonably connected with it properly may be incorporated in the Act and are germane to the title. Norton v. Lusk, 248 Ala. 110, 26 So.2d 849 (1946).
The title of the Prison-Made Goods Act is:
Relating to products made by inmates of the Alabama Board of Corrections and the sale of such products to state institutions, departments and agencies and to political subdivisions; to authorize vocational training and rehabilitation of prisoners through work in industries at penal units under the said Board of Corrections; requiring state agencies to buy prison-made products when specifications of standards and quality are met; authorizing political subdivisions to buy directly from the Board of Corrections; prescribing the method for setting prices of prison-produced products; specifying kinds of additional information to be contained in post-audit reports of manufacturing enterprises within the prison system; authorizing an industrial revolving fund for financing prison industries, and prescribing the disposition of receipts therefrom; making it unlawful to sell prison-produced products on the open market, and specifying penalties therefor.
After carefully comparing this title to the sections of the Act we fail to discern any merit to the plaintiffs' objections. To *909 the contrary, the title clearly expresses the general subject of rehabilitation of inmates by employment in vocational industries, and the sale of products so made as a financing method. The objection that the Act is vague because the state agencies required to purchase these goods under Section 4 are unascertainable, is simply untenable. Even if the description of those agencies is not free from ambiguity, that does not render the terms of the Act incapable of enforcement when a reasonable interpretation is available. City of Birmingham v. Samford, 274 Ala. 367, 149 So.2d 271 (1963); Jansen v. State, 273 Ala. 166, 137 So.2d 47 (1962).
Finally, the plaintiffs maintain that the present prison industries are being operated in violation of the Act because they are operating with funds derived from the general operating budget of the Board of Corrections rather than from the industrial revolving fund established by Section 13 of the Act (§ 14-7-19). This argument fails for two reasons. First, the revolving fund was legislatively restricted to funds generated by new industries established after the Act became effective. This conclusion is clear from Act No. 763, Reg.Sess.1976, Acts of Ala. at 1047, 1058-59 (the appropriations bill):
"If, at the end of any fiscal year, the unencumbered balance of the revolving fund exceeds $250,000, any further unencumbered balance in excess of $250,000 may be transferred to the Board of Corrections maintenance fund. This revolving fund herein provided for shall not involve industries currently operated by the Board of Corrections but shall apply only to those industries created as a result of SB 440."
The record shows that, with one exception which necessitated no new funding and generated no funds, there were no new industries established by the Board of Corrections, hence there was no operation contrary to the legislative mandate of Section 13. Second, had there been any such noncompliance by the Board of Corrections, the plaintiffs' remedy properly would have been affirmative relief compelling compliance, rather than the relief which plaintiffs requested, which was relief enjoining the Board from complying with the Act's provisions.
Let the trial court's decree be affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C. J., and BLOODWORTH, J., concur specially.
TORBERT, Chief Justice (concurring specially):
I concur in the result reached by this court. However, the purpose of the Prison-Made Goods Act requires emphasis. As stated in the opinion:
The Act itself belies any purpose to operate the program for profit. Its stated intent is "self-maintenance" and reimbursement, not profit. Its announced "primary objective" is "vocational training and rehabilitation."
The Act is constitutional and in line with the previous decisions of this court only so long as the primary objective and the implementation of the Act are not to produce revenue or profit to this state from the sale of prison-made goods.
Section 14-7-20, Code 1975, concerning the disposition of proceeds from the sale of prison-made goods, delineates the sole uses for such proceeds:
[A]nd such moneys so collected and deposited shall be used solely for the purchase of raw materials, manufacturing supplies, equipment, machinery and buildings used to carry out the purposes of this chapter, and to otherwise defray the necessary expenses incident thereto ...
The Board of Corrections may with full authority operate prison industries for rehabilitation purposes when any "profit" from *910 such industries is used for self-maintenance. It must avoid, however, a surplus or profit margin in line with the opinion of this court that charges "`shall be based exclusively upon the reasonable cost of operation and maintenance,'" Opinion of the Justices, 247 Ala. 66, 70, 22 So.2d 521, 525 (1945).
The provision in § 14-7-20 that in the event proceeds exceed maintenance and operation costs the excess will be transferred to the state general fund, does not signify an additional means for the generation of revenue for the state. The provision merely allows for disposal of excess proceeds. This is further apparent given the consideration that the revenue generating potential of the Act is a means and not an end to the purposes of the Act. As this court said in Sheppard v. Dowling, 127 Ala. 1, 10, 28 So. 791, 794 (1899):
[U]nder the police power the state has the undoubted right to provide such regulations, and the pecuniary interest which the state is supposed to have in the business through its subdivisions, is a mere necessary incident to the exercise of this undoubted power ... (emphasis supplied).
The fact must be emphasized that the constitutionality of this Act withstands scrutiny because of its stated purpose of rehabilitation and reimbursement to the state and does so only when profit remains a mere necessary incident to the operation and maintenance of prison industries and not a primary motive.
BLOODWORTH, J., concurs.