683 So.2d 952 (1996)
Ex parte ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD, et al.
(In re Jean BARTLETT, d/b/a Package Palace v. ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD, et al.).
1940558.
Supreme Court of Alabama.
February 23, 1996.
Rehearing Denied May 17, 1996.
*953 Jeff Sessions, Atty. Gen., Jeffery H. Long, Asst. Atty. Gen., and William P. Gray, Jr., Governor's Legal Advisor, for petitioner.
Jim L. DeBardelaben and Dorothy F. Norwood, Montgomery, for Jean Bartlett.
Jeff Sessions, Atty. Gen., and William A. Gunter IV, Deputy Atty. Gen., for amicus curiae Department of Conservation and Natural Resources.
William Prendergast and Lynn Sensabaugh Merrill, Asst. Attys. Gen., Department of Human Resources, for amicus curiae Alabama Department of Human Resources.
Mark J. Williams and Tracy S. McCooey, Montgomery, for amicus curiae Alabama State Employees Association, in support of appellee.
Jeff Sessions, Atty. Gen., and John R. Wible, Gen. Counsel, Department of Public Health, for amicus curiae Department of Public Health.
PER CURIAM.
The Alabama Alcoholic Beverage Control Board ("Board") petitioned this Court for certiorari review of the judgment of the Court of Civil Appeals holding that the Board's retail sale of alcoholic beverages violated Article IV, § 93, Alabama Constitution of 1901. We granted the writ, and we now reverse that holding. However, we affirm a separate aspect of that judgment.
The Court of Civil Appeals issued an opinion affirming in part and reversing in part the judgment of the Montgomery Circuit Court. In its opinion, the Court of Civil Appeals set out the following procedural history:
"On November 3, 1988, Jean Bartlett, d/b/a Package Palace, filed a complaint in the Montgomery County Circuit Court naming [as defendants] the ABC Board; Tandy D. Little, individually and in his official capacity as the Administrator of the ABC Board; Audrey C. Wright, individually and as a member of the ABC Board;

*954 Don M. Martin, individually and as a member of the ABC Board; Guy Hunt, in his official capacity as Governor of the State of Alabama; and George C. Wallace, Jr., in his official capacity as Treasurer of the State of Alabama, as defendants.
"Bartlett's complaint alleged, inter alia, that the ABC Board's operation of retail liquor stores for the sale of alcoholic beverages, after 1980, violated Article IV, § 93, Alabama Constitution of 1901; that the ABC Board had overcharged retailers by failing to pass on the discounts that it received from manufacturers and by taxing on the overcharged amounts; and that the ABC Board lacked authority to buy or sell any product other than alcoholic beverages.
"Bartlett's complaint requested, inter alia, that the trial court order: (1) that the ABC Board cease the retail sale of alcoholic beverages, as well as the retail sale of non-alcoholic items in the ABC Board's liquor stores; (2) that the ABC Board refund the discounts it had received from various liquor companies but had failed to pass on to the retail and wholesale purchasers; and (3) that the ABC Board pay all costs of this proceeding, including reasonable attorney fees. On October 2, 1989, the parties stipulated to the facts and the legal issues involved in this action.
"On March 30, 1990, the trial court entered an order which addressed the constitutional issue and continued the matter for a ruling on all other pending issues. The trial court held that `the continued sale of intoxicating liquors after the enactment of Act No. 80-529 does not violate Article IV, § 93 of the [Alabama Constitution of 1901] in that intoxicating liquors are regulated within the police powers of the State.' The trial court held, however, that `[t]he sale of any other items by [the ABC Board's retail liquor stores] which contain no alcoholic content (i.e., bartending guides, non-alcoholic mixers, soft drinks, etc.) is not included in the police power of this State and therefore is prohibited by Article IV, § 93 of the Constitution.'
"On March 2, 1993, the trial court entered an order which found that `[i]t is undisputed that in the fiscal years 1983 to 1988, the ABC Board received a total of $1,936,219.34 in discounts from various liquor companies. It is also undisputed that the ABC Board did not consider any discount it received on purchase of spirituous liquors in establishing the wholesale and retail price of liquors.'
"The trial court further found that `the ABC Board [had] been granted the intrinsic power to determine the price of all spirituous and vinous liquors' and held that `any decision to pass along discounts [was] within the discretion of the [ABC Board].' The trial court found in favor of the defendants on all remaining issues and taxed costs against Bartlett.
"Bartlett appeals and presents this court with only two issues: (1) whether the ABC Board's operation of state liquor stores engaged in the retail sale of alcoholic beverages violates Article IV, § 93, Alabama Constitution of 1901, and (2) whether the ABC Board was required to take into consideration all discounts it had received on the purchase of alcoholic beverages when establishing the wholesale and retail price of those alcoholic beverages."
Bartlett v. Alabama Alcoholic Beverage Control Board, 683 So.2d 947, 948 (Ala.Civ.App. 1994).
In its opinion, the Court of Civil Appeals noted that, after the adoption of Act No. 80-529 ("the 1980 Act"), individuals, businesses, and corporations within Alabama, licensed by the Board, were permitted to sell at retail alcoholic beverages for off-premises consumption. The court concluded that "these private retail liquor stores and the ABC Board's retail liquor stores are engaged in the same business and are in competition with each other." 683 So.2d at 950 (citing State Dep't of Revenue v. B & B Beverage, Inc., 534 So.2d 1114 (Ala.Civ.App.1987))[1]. *955 The court held that "the operation of the state liquor stores for the retail sale of liquor and other alcoholic beverages constitutes a business activity in competition with other business activities in private enterprise and is prohibited by, and in violation of, Article IV, § 93, Alabama Constitution of 1901." 683 So.2d at 951. (Emphasis original.) The Court of Civil Appeals dealt with the fact that in setting the wholesale and retail prices of liquor sold to private retailers and to the public, the Board had failed to pass on certain discounts it had received from various liquor companies. The Court held that, given its holding that the Board had been engaged in private enterprise during the years in question, the Board was "under no obligation to pass on the discounts of almost $2,000,000 it received between 1983 and 1988, the amount stipulated to by the parties." 683 So.2d at 952.
The holding that the Board's retail sale of alcoholic beverages violates § 93 is based on the court's implicit conclusion that the legislature impliedly repealed at least two provisions authorizing the Board to sell alcoholic beverages and to distribute net profits (§§ 28-3-43 and 28-3-74, Ala.Code 1975). Further, the court distinguished on its facts State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939), which was decided at a time when the State authorized only the Board to sell alcoholic beverages. Additionally, the court relied on Associated Industries of Alabama, Inc. v. Britton, 371 So.2d 904, 907 (Ala.1979); that case, however, did not reflect all of the factors to be considered in determining whether legislation violates § 93.
In determining whether the State's operation of liquor stores in conjunction with the licensing of private retailers violates § 93, we must examine that constitutional provision. Section 93, as amended by Amend. 58, provides in pertinent part:
"The state shall not engage in works of internal improvement, nor lend money or its credit in aid as [sic] such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto."
The clause at issue here"nor shall the state be interested in any private or corporate enterprise""has been construed to mean... that the State may not engage, alone or in concert with others, in business of a type generally characterized as private enterprise." Edmonson v. State Industrial Development Auth., 279 Ala. 206, 210, 184 So.2d 115, 118 (1966)[2] (citing Murphy, supra).
In State ex rel. Wilkinson v. Murphy, supra, this Court held that the phrase at issue here is "broad enough to embrace a business operated solely by the State for trade and traffic." 237 Ala. at 335, 186 So. at 490. The Court nevertheless concluded that the "police power over liquor traffic is wholly uninfluenced and unaffected by any constitutional provision." 237 Ala. at 341, 186 So. at 496. The Court explained that "police power is inherent in the government, and while it may be set aside by the Constitution, yet in order to find that it has been so set aside the Constitution must plainly so indicate." Id.
The Court of Civil Appeals stated:
"The holding in Murphy was predicated on the fact that the State prohibited the sale of `intoxicating liquors by private individuals or corporations ...' and on the fact that the State provided `for the sale of intoxicating liquors solely through state stores.' Murphy, 237 Ala. at 339, 186 So. at 495 (emphasis added [by the Court of Civil Appeals]). Those facts ceased to exist after the enactment of the 1980 Act and the coming into existence of the privately owned retail liquor stores."
683 So.2d at 950.
The holding in Murphy was that "[the] police power over the liquor traffic is wholly *956 uninfluenced and unaffected by any constitutional provision." 237 Ala. at 341, 186 So. at 496. The Murphy court stated, "[I]t is the peculiar function of the lawmakers to ascertain and determine when the welfare of the people requires the exercise of the State's police powers, and what are appropriate measures to that end, subject only to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the Constitution." 237 Ala. at 338, 186 So. at 493.
Bartlett urges that the legislature repealed the statutes authorizing the operation of State liquor stores. The repealer clause of the 1980 Act, § 27, specifically repealed §§ 28-3-70 through -73 Ala.Code 1975, but these are not the only Code sections pertaining to the operation of the State liquor stores. For instance, § 28-3-43 provides that the Board shall have the power to "buy, manufacture and sell alcoholic beverages and to have alcoholic beverages in its possession for sale, as defined and enumerated in this chapter." See § 28-3-43(a)(1). Additionally, § 28-3-74, providing for the distribution of net profits from proceeds of Board stores, remains in effect.
To conclude that the legislature intended to withdraw the Board's authorization to operate liquor stores, this Court would have to conclude that the 1980 Act on the one hand and §§ 28-3-43 and 28-3-74 on the other hand are "so repugnant to each other that they [are] irreconcilable." Hurley v. Marshall County Commission, 614 So.2d 427, 430 (Ala.1993). Additionally, as this Court stated in Merrell v. City of Huntsville, 460 So.2d 1248, 1251 (Ala.1984), "repeal of a statute by implication is not favored, ... and a prior act is not repealed unless provisions of a subsequent act are directly repugnant to the former." See also City of Tuscaloosa v. Alabama Retail Ass'n, 466 So.2d 103, 105-06 (Ala.1985) ("the degree of conflict required between two statutes in order to declare that one impliedly repeals the other is that of irreconcilability" and "`repeal by implication is not favored in the law'").
It is presumed that the legislature did not intend to make any alteration in the law beyond what it declares either expressly or by unmistakable implication. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). This Court is bound to presume that the legislature had knowledge of State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939), when it amended the 1937 Act in 1980. Wright v. Turner, 351 So.2d 1 (Ala.1977). The language of the 1980 Act does not indicate that the State liquor stores were abolished when the operation of privately owned stores was approved; it appears from the Act that privately owned stores were to be permitted to operate in conjunction with State-owned liquor stores.
In Associated Industries of Alabama, Inc. v. Britton, 371 So.2d 904 (Ala.1979), the Court upheld the "Prison-Made Goods Act of Alabama," (Ala.Acts 1976, No. 286). The plaintiffs argued that the Act violated § 93. This Court, referring to In re Opinion of the Justices No. 68, 247 Ala. 66, 22 So.2d 521 (1945), stated the test to be "whether the operation of the enterprise was designed to make a profit." Britton, 371 So.2d at 907. This Court in Britton stated:
"The Act itself belies any purpose to operate the program for profit. Its stated intent is `self-maintenance' and reimbursement, not profit. Its announced `primary objective' is Vocational training and rehabilitation.' Sales upon the open market are prohibited. Thus, it is neither a `business enterprise' nor one which ordinarily might be expected to be undertaken for profit."
Id. (emphasis original) (citing, with the signal "cf.," In re Opinion of the Justices No. 126, 256 Ala. 170, 54 So.2d 68 (1951)). The Court noted in Britton that the Act limited the sale of the products to State and local governmental agencies only.
The Court of Civil Appeals read Britton as holding that the State is operating a business enterprise in violation of § 93 if a State activity involves sales upon the open market and is undertaken for profit. In determining whether the Prison-Made Goods Act violated § 93, this Court also examined the primary purpose of the Act:
"Any `profit' seemingly generated through such an operation, whether used to purchase *957 supplies or placed in the State General Fund, must be considered with the purpose of the Act[,] that is, to rehabilitate the inmates and to reimburse the state. Speculation concerning the state's profit-making potential in such an undertaking, we respectfully suggest, is not an acceptable substitute for evidence of profit (`gross' or `net') itself after considering the cost of law enforcement and institutional operation."
Britton, 371 So.2d at 907.
Also, in Britton this Court reaffirmed the principle that "[t]he police power of the state is co-extensive with the public interest to be safeguarded" and concluded that in regard to the Prison-Made Goods Act the generation of profit "is a secondary consideration, the primary aspect of the legislation being well within the police power and, accordingly, constitutionally permissible." 371 So.2d at 907. As this Court explained in Murphy, the interest referred to in the phrase "nor shall the state be interested in any private ... enterprise":
"is a pecuniary interest in any private or corporate enterprise, and this prohibition was, we think[,] inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters."
237 Ala. at 335, 186 So. at 490. That language is quoted in Britton, and there, regarding the Prison-Made Goods Act of Alabama, the Court stated:
"Applying this postulate to the enterprise at hand, [we conclude that] clearly it is not constitutionally offensive under Section 93. The Act itself belies any purpose to operate the program for profit. Its stated intent is `self-maintenance' and reimbursement, not profit. Its announced `primary objective' is `vocational training and rehabilitation.' Sales upon the open market are prohibited. Thus it is neither a `business enterprise' nor one which ordinarily might be expected to be undertaken for profit. Cf. Opinion of the Justices, 256 Ala. 170, 54 So.2d 68 (1951). Indeed, the products may be sold only to state and local government agencies and, hence, cannot reasonably be viewed as creating a state interest in private or corporate enterprise."
371 So.2d at 907. (Emphasis original.) An examination of whether an act of the legislature violates § 93 must include a consideration of the purpose of the act itself.
Based on the foregoing discussion, we reverse that portion of the judgment of the Court of Civil Appeals holding that the Board's retail sale of alcoholic beverages violated § 93 of our State Constitution.
The Court of Civil Appeals also held that the Board was under no obligation to pass on to customers discounts amounting to nearly $2,000,000 between 1983 and 1988. The court based this holding on its conclusion that the Board's stores had been operating as private enterprises. The Court of Civil Appeals quoted the trial court's order:
"On March 2, 1993, the trial court entered an order which found that `[i]t is undisputed that in the fiscal years 1983 to 1988, the ABC Board received a total of $1,936,219.34 in discounts from various liquor companies. It is also undisputed that the ABC Board did not consider any discount it received on [the] purchase of spirituous liquors in establishing the wholesale and retail price of liquors.'
"The trial court further found that `the ABC Board [had] been granted the intrinsic power to determine the price of all spirituous and vinous liquors' and held that `any decision to pass along discounts [was] within the discretion of the [ABC Board].' The trial court found in favor of the defendants on all remaining issues and taxed costs against Bartlett."
683 So.2d at 948.
We agree that the trial court's holding that whether to pass along those discounts was within the discretion of the Board. Accordingly, we hold that the Board is under no obligation to pass along those discounts; we affirm that portion of the Court of Civil *958 Appeals' judgment so holding, even though that court stated an incorrect rationale.
The judgment of the Court of Civil Appeals is therefore affirmed in part and reversed in part.
AFFIRMED IN RESULT IN PART; AND REVERSED IN PART.
SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX, J., concurs specially.
HOUSTON, J., concurs in the result.
HOOPER, C.J., dissents.
MADDOX, Justice (concurring specially).
I concur completely in the majority's opinion, which follows the holding of this Court in State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939). In Murphy, this Court stated:
"[I]t is the peculiar function of the lawmakers to ascertain and determine when the welfare of the people requires the exercise of the State's police powers, and what are appropriate measures to that end, subject only to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the Constitution."
237 Ala. at 338, 186 So. at 493. I have no doubt that the power of the Legislature to regulate the purchase, manufacture, and sale of alcoholic beverages is not restricted by § 93 of Alabama's Constitution.
I write separately only to address an issue that is not addressed in the opinion of this Court or in the opinion of the Court of Civil Appeals, but was addressed by the trial courtthe power of ABC Board stores to sell nonalcoholic items. I find no authority under the Constitution that would permit the ABC Board stores to engage in the business of selling nonalcoholic items. Although the Court of Civil Appeals did not reach the issue of whether the sale of nonalcoholic items violated § 93, I did not want my concurrence in the majority's opinion to be understood as suggesting that I would hold that ABC Board stores can constitutionally sell such items.
HOUSTON, Justice (concurring in the result).
To me, the meaning of the constitutional prohibition "nor shall the state be interested in any private or corporate enterprise" hinges on the words "[to] be interested in," "private," and "corporate," rather than on the word "enterprise."
I concede that an "enterprise" is "[a] business venture or undertaking." Black's Law Dictionary 531 (6th ed. 1991). I concede that the sale of liquor and wine at retail for off-premises consumption is an enterprise. I concede that "`the state [had] the right and power to provide for the sale of intoxicating liquors solely through state stores,'" Bartlett v. Alabama Alcoholic Beverage Control Board, 683 So.2d 947 (Ala.Civ.App.1994), quoting State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 339, 186 So. 487, 495 (1939), and that it had that right and power from the enactment of the original Alabama Alcoholic Beverage Control Act (Acts of Alabama 1937, No. 66) until 1980, when the legislature passed the Alabama Beverage Licensing Code (Acts of Alabama 1980, No. 80-529), which empowered the Alcoholic Beverage Control Board to issue licenses to individuals and corporations "[t]o sell liquor and wine at retail for off-premises consumption." Ala. Code 1975, § 28-3A-3(8). I concede that thereafter the ABC Board did issue licenses to individuals and corporations to sell liquor and wine at retail for off-premises consumption.
The majority of this Court did not agree with the State's argument in State v. Murphy, which was as follows:
"[T]he words, `nor shall the state be interested in any private ... enterprise,' mean merely that the State shall not be interested with individuals, associations or corporations in the operation of a private or corporate enterprise, and [those words were] not intended to prevent the State itself from engaging in a private enterprise."
237 Ala. at 335, 186 So. at 490. The majority, in rejecting this argument, wrote:
"But we think this too narrow a construction of the Constitution, and clearly *959 out of harmony with the motivating cause of the inclusion of this prohibition in our organic law. The interest referred to is a pecuniary interest in any private or corporate enterprise, and this prohibition was, we think inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters.
"And we are of the opinion it is quite broad enough to embrace a business operated solely by the State for trade and traffic."
Id.
I concede that if this interpretation of the phrase in § 93 of our Constitution is correct, then the judgment of the Court of Civil Appeals must be affirmed, because the majority in Murphy held that § 93 was inserted into our organic law so as to prevent the State from being placed in business enterprises in competition with private individuals or corporations. Since the Board began in the 1980s to issue licenses to individuals and corporations to sell liquor and wine at retail for off-premises consumption, the State has been in competition with those licensees.
I was prepared to dissent, until I tried to make the phrase "[to] be interested in" mean "to be in competition with." It does not. The word "interested" is an adjective as it is used in § 93 of our state constitution. The adjective "interested" is defined as "having a share or concern in some affair or project." Webster's Third New International Dictionary 1178 (3 ed. 1971). Nowhere can I find any authority to support the majority's contention that the phrase "[to] be interested in" is synonymous with the phrase "to be in competition with." The Oxford Thesaurus, American Edition 242 (1992), does not list "compete" as a synonym of "interested," nor does it list "interested" as a synonym of "compete," pp. 70-71. Therefore, by this phrase in § 93, the State is prohibited from "having any share or concern" in any private or corporate enterprise.
"Enterprise" is defined as "[a] business venture or undertaking." Black's Law Dictionary 531 (6th ed. 1991). If the State is prohibited from being interested in any enterprise, then clearly the State would be prohibited from having any share or concern in any business venture or undertaking, including the retail liquor business.[3] However, the word "enterprise" is preceded by the phrase "any private or corporate." "[P]rivate" is defined as "[a]ffecting or belonging to private individuals, as distinct from the public generally." Black's Law Dictionary 1195. "Corporate" is defined as "[b]elonging to a corporation; as a corporate name. Incorporated; as a corporate body." Black's Law Dictionary 339. This is the same definition that appeared in the 1891 Black's Law Dictionary 278 (the oldest Black's that I have been able to consult). I cannot find a particular or different meaning for the phrase "corporate enterprise" in use at the time the 1875 Constitution or the 1901 Constitution was drafted.
Therefore, I conclude that the plain meaning of the phrase in § 93"nor shall the state be interested in any private or corporate enterprise"is that the State shall not have any share or concern in a business venture or undertaking owned by private individuals or corporations. Clearly, the ABC Board retail stores are not business ventures or undertakings owned by private individuals or corporations.
This plain meaning is substantiated by the drafters' inclusion of the phrase that follows the provision in question: "nor shall the state... lend money or its credit to any individual, association, or corporation." Taken together, these phrases preclude the State from having a share or concern in business ventures or undertakings owned by private individuals or corporations or from lending money or extending credit to any individual, any collection of individuals, or any corporation.
History also supports this plain meaning.
*960 The Constitution of Alabama of 1865 provided:
"§ 32. The general assembly shall make provision by law for obtaining correct knowledge of the several objects proper for improvement in relation to the roads and navigable waters of the state and for making a systematic and economical application of the means appropriated to those objects."
(Emphasis added.) This provision was changed in the 1868 Constitution to provide as follows:
"§ 33. The state shall not engage in works of internal improvement; but its credit in aid of such may be pledged by the general assembly on undoubted security, by a vote of two-thirds of each house of the general assembly."
(Emphasis added.)
Under the provisions of § 33 of the 1868 Constitution, the legislature enacted laws that resulted in what historians have referred to as the railroad scandals. In Rogers, Ward, Atkin, and Flynt's Alabama: The History of a Deep South State (1994), the following account appears on pages 253-54:
"With good cause various scholars have illustrated the state's railroad scandals with the case of the Alabama and Chattanooga Railroad. After paying $200,000 (apparently in bribes to state politicians) for its state charter, the company moved to recoup its investment. Governor Smith, in what has passed as merely a case of inept bookkeeping, endorsed bonds worth $4,720,000 for the company. Only 240 miles of track were ever completed (entitling the company to $768,000), and only 154 of those were in the correct state (Alabama). Returning to its cornucopia of wealth, and with wholesale bribery of the legislature, the company got $2,000,000 in state bonds with its property as security. Most of the bonanza was used to build a hotel and opera house in Chattanooga, Tennessee. Under such management the Alabama and Chattanooga proceeded into bankruptcy and could not pay the interest on its bonds. The state paid the interest and seized the road and tried to operate it. The state then bought the road at a bankruptcy sale for $312,000 (was it buying its own railroad?), only to be reversed by state and federal courts. The state ended up paying the first mortgage holders $1,000,000 to take the line back in order `to be out of the business.'
"To a lesser extent the same machinations were repeated with the South and North Alabama Railroad, the East Alabama and Cincinnati, the Selma and Gulf, the Mobile and Alabama, the Montgomery and Eufaula, and others. In addition to state support, counties and cities also issued bonds, leading to the famous `strangulated' counties that went into bankruptcy. Viewed with perspective, it was a sorry story of human gullibility, unregulated entrepreneurs, and dishonest politicians. The taxpayers were the victims."
The president of the 1875 Constitutional Convention, in opening the convention, remarked:
"The growth of corporations is one of the marvels of the age in which we live. Their power, like that of King George, `has increased, is increasing, and ought to be diminished.' Great as they are, they are simply the representatives of individual interests, and are never organized except to promote personal ends. The dignity of government is always compromised when its credit is surrendered and its honor committed to other custodians than its own agents and servants. Constitutional prohibitions should protect the State against the contingencies of legislative departure from the principle."
(Emphasis added.) Minutes of the Constitutional Convention of 1875, pp. 6-7.
The Constitutional Convention of 1875 changed § 33 of the 1868 Constitution. It was first proposed that what is now § 93 of the present Constitution read: "Sec. 3. The State shall never engage in works of internal improvement, nor lend its credit in aid of such; nor shall the state be interested in, or lend money or its credit in aid of, any individual, association or corporation, for any purpose whatsoever." Minutes of the Constitutional Convention of 1875, pp. 38 and 109.
*961 The following appears on page 109 of these minutes:
"Mr. Sykes offered the following amendment, which was adopted:
"Amend in the first line by inserting, between the words `lend' and `its,' the words `money or'; and further amend by striking out all of said section after the words `interested in,' and inserting therefor `any private or corporate enterprise, or lend money or credit to any individual, association or incorporation.'
"The section, thus amended, was adopted."
Therefore, instead of the State's not being "interested in ... any individual, association or corporation, for any purpose whatsoever," the drafters of the Constitution of 1875 proposed, and the citizens of Alabama adopted, the phrase "nor shall the state be interested in any private or corporate enterprise."
In the resolution commending the proposed Constitution of 1875 to the citizens of Alabama, the delegates to the Constitutional Convention summed up their feelings of the necessity for a new constitution; that resolution contained the following remarks, which support the plain meaning of the phrase in § 93 now in dispute:
"The Constitution of 1868, was not the work of the People of Alabama. It is the offspring of usurpation, and the contrivance of unscrupulous adventurers, inflicted upon our people after they had solemnly rejected it. It was framed by enemies in utter disregard of the altered condition of our people, with no consideration for that universal impoverishment, which should have forbidden the imposition of every unnecessary burden. It was manufactured for the benefit of alien and corrupt usurpers, and has been administered in an office-holding and governmental extravagance, which in a few years has bankrupted the State and well nigh ruined our people.
". . . .
"The General Assembly can pass no laws except of a general and public character. All power to enact local or special laws for the benefit of individuals or corporations is prohibited, and the people are thereby protected against the heavy expense of legislation in which they have no interest.
"All power in the General Assembly to embark the State in railroad building, or works of internal improvement, or to give or lend the money or credit of the State to individuals or corporations in aid of such enterprises is forever prohibited. Neither can the legislature authorize any town, city or county to bind the people for stock in railroads or any works or enterprises of like character. The denial of this power to your State Government is an invaluable safeguard in the future, against the imposition of burdens that are now crushing the people down with taxes.

". . . .
"Fellow-citizens, the constitution of 1868 and the constitution of 1875, are now before youmake your own selection, and shoulder the responsibilities and possibilities attending your decision.
"How can any true man hesitate[?] Behind him and around him are the bitter fruits of a constitution he had no voice in making. What is the future of Alabama and her people, if the incubus of an alien constitution, framed by usurpers in the interest of plunderers, remains as the organic law for their government?"
(Emphasis added.)
Because the ABC Board's retail stores are not business ventures or undertakings owned by private individuals or corporations, the State did not violate § 93 of the State constitution when through those stores it maintained a monopoly on the retail sale of liquor and wine for off-premises consumption. The mere fact that in the 1980s the State gave up its monopoly in this field so as to allow certain individuals and corporations also to sell liquor and wine at retail for off-premises consumption did not trigger a violation of § 93, for "interested in" does not mean "in competition with."
Therefore, I would hold that the phrase "nor shall the state be interested in any private or corporate enterprise" means merely that the State shall not be interested with individuals, associations, or corporations in the operation of a private or corporate enterprise; *962 and I would overrule that portion of State v. Murphy that is inconsistent with this interpretation. This Court must remember that it is construing a state constitution and not the Federal Constitution. State constitutions are not the source of the police power of state legislatures. 16 C.J.S. Constitutional Law § 58, p. 149 (1984) (citing Bolton v. White Motor Co., 239 Ala. 168, 194 So. 510 (1940)). A state's police power is inherent in its very existence and is not derived from a grant of power from a constitution. "[T]he legislature possesses and may exercise all legislative power, or power to enact statutes, of the state or people of the state, subject only to the limitations or prohibitions imposed by the state constitution." 16 C.J.S. at 150 (citing Van Hart v. deGraffenried, 388 So.2d 1196 (Ala.1980)). Because of their nature, state constitutions must be "construed strictly in favor of the state, and as not divesting it or its government of any of its prerogatives, unless the intent to do so is clearly expressed." 16 C.J.S. at 150-51 (emphasis added). See also Sims v. Russell, 236 Ala. 562, 183 So. 862 (1938). Herein lies my problem with the majority opinion. The majority in this case, like the majority in Murphy, failed to analyze the effect that § 93 has on the scope of the state's police powers, in accordance with the principles enunciated above.
Because I am convinced that the only logical and historically accurate construction of the phrase "nor shall the state be interested in any private or corporate enterprise" is that it is a prohibition against the State's investing in privately owned business enterprises over which the state would have only limited control, I cannot concur with the majority's opinion as written and, therefore, I concur only in the result of that opinion.
HOOPER, Chief Justice (dissenting).
This Court should hold that the sale of alcoholic beverages by retail stores operated by the State of Alabama violates Art. IV, § 93, Alabama Constitution of 1901. That section states:
"The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; nor shall the state be interested in any private or corporate enterprise."
After the end of prohibition in 1933, liquor was sold on the open market in Alabama. In 1937 the Alabama legislature enacted the original Alcoholic Beverage Control Act, Act No. 66, Ala.Acts 1937. Under that Act, liquor for off-premises consumption was sold only through state-operated liquor stores.
In 1980, the Alabama legislature passed the "Alcoholic Beverage Licensing Code," Act No. 529, Ala.Acts 1980, codified at Ala. Code 1975, § 28-3A-1 et seq. The 1980 Act authorizes the ABC Board to license others to sell alcohol for off-premises consumption and repeals provisions of the 1937 Act regarding the operation of state operated liquor stores. The 1980 Act made no provision for the continued operation of state liquor stores.
The 1980 Act defined the function of the Alcoholic Beverage Control Board as that of licensing private entities to sell alcoholic beverages. Thus, the ABC Board has the function of regulating, controlling, and supervising alcoholic beverage licensees.
The Alabama Court of Civil Appeals in Bartlett v. Alabama Alcoholic Beverage Control Board 683 So.2d 947 (Ala.Civ.App.1994), held:
"[T]he operation of the state liquor stores or the retail sale of liquor and other alcoholic beverages constitutes a business activity in competition with other business activities in private enterprise and is prohibited by, and in violation of, Article IV, § 93, Alabama Constitution of 1901...."
The Board acknowledges in its brief, in Argument 1, that § 93 of the 1901 Constitution prevents the state from being involved in a private enterprise. There is no question that the sale of alcoholic beverages is an aspect of free and private enterprise. The Board goes on to argue that it can compete on the open market and cites in support of that argument State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939). However, the Court of Civil Appeals followed the reasoning and logic of Murphy in rejecting this very argument. The opinion of the Court of Civil Appeals stated:
*963 "The holding in Murphy was predicated on the fact that the State prohibited the sale of `intoxicating liquors by private individuals or corporations' and on the fact that the `for the sale of intoxicating liquors solely through state stores.' Murphy, 237 Ala. at 339, 186 So. at 495 (emphasis added [by the Court of Civil Appeals]). Those facts ceased to exist after the enactment of the 1980 Act and the coming into existence of the privately owned retail liquor stores. [Citations omitted.] Consequently, the holding in Murphy, having been based on a different factual situation, is not binding on this court in this case. We, however, follow the reasoning and logic as expressed in Murphy."
683 So.2d at 950.
Thus, the repeal of the 1937 Act and the entering into the sale of liquor by private package stores made the operation of the state liquor stores or the retail sale of liquor by the civil government of Alabama a business activity in violation of § 93 of the Alabama Constitution of 1901. If State ex rel. Wilkinson v. Murphy held that the sale of alcoholic beverages by the State of Alabama is an exercise of the police power, it went too far. However, the logic of the opinion by the Court of Civil Appeals does not require that this Court address that issue. The 1980 Act redefined the function of the ABC Board, and that Board placed itself in competition with private enterprise when it continued to operate the state liquor stores. Except as to who receives the income, what difference does it make that state liquor stores sell alcoholic beverages? The only difference between state liquor stores and private liquor stores is who receives the income. The State's receipt of the income puts it in direct competition with private enterprise, and, logically, the state has an "interest" in a similar enterprise. It is unconstitutional for the State of Alabama to have such an interest. See § 93.
The Court of Civil Appeals, in State Department of Revenue v. B & B Beverage, Inc., 534 So.2d 1114, 1117 (Ala.Civ.App.1987), concluded that "the state stores and package stores, in that they both sell liquor at retail, are engaged in the same business."
The state's police power authorizes it to control, regulate, and restrain the sale of liquor. The police power does not authorize the state to violate the Constitution, which clearly prohibits the state from engaging in a private enterprise. It matters not whether the State's civil service employees are running the State's liquor enterprise or not. Section 93 places no such condition or limitation on the type of interest the state is prohibited from having in a "private or corporate enterprise." No such limit on the meaning of § 93 is expressed or implied in the plain wording of that section. The policy decision that all alcoholic beverages were to be sold by private enterprise was a decision made by the Legislature in 1980. The judgment of the Court of Civil Appeals should be affirmed.
NOTES
[1] In B & B Beverage, the question before the Court of Civil Appeals was "not one of howin what mode or mannerthe liquor traffic can be controlled, [but] one of equal protection of the law regarding an unequal taxation arrangement." 534 So.2d at 1116 (citing State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939)).
[2] In Edmonson, this Court reviewed Act No. 662, Ala.Acts 1965 (Reg.Session), creating a public corporation known as the State Industrial Authority, composed of the director of the State Planning and Industrial Development Board, the director of revenue, and the director of finance. We concluded that Act No. 662 did not authorize the State or the Authority to engage in private enterprise and noted that the Authority uses the proceeds from the sale and issuance of its bonds to make grants to local public bodies.
[3] I tried to make the phrase "private or corporate enterprise" mean "enterprise." It does not.